UNITED STATES of America, Plaintiff-Appellee,

v.

Anthony Leonard SCRIMA, Defendant-Appellant.

No. 85–3521.

United States Court of Appeals, Eleventh Circuit.

June 19, 1987.
As Amended July 13, 1987.

**998**

Harrison T. Slaughter, Jr., Robert A. Leventhal, Orlando, Fla., for defendant-appellant.

Robert W. Merkle, U.S. Atty., Stephen J. Calvacca, Asst. U.S. Atty., Orlando, Fla., for plaintiff-appellee.

Before HILL and HATCHETT, Circuit Judges, and HENDERSON, Senior Circuit Judge.

HENDERSON, Senior Circuit Judge:

Anthony Scrima appeals his convictions in the United States District Court for the Middle District of Florida on four counts of income tax evasion in violation of 26 U.S.C. § 7201. Finding no error, we affirm.

Following an investigation by the Internal Revenue Service, Scrima was indicted in connection with his income tax returns filed for the years 1978 through 1981. He was charged with underreporting his income by approximately $350,000.00 during the four-year period.[1]

At the trial, the government sought to prove Scrima's discrepancies in reported income by means of an indirect method known as the net worth theory, essentially showing that Scrima enjoyed increases in wealth and nondeductible expenditures greater than could be justified by his reported income or any nontaxable sources of funds.

The defendant did not testify in his own defense. Instead, he sought to establish through the testimony of a business associate and an accountant, qualified as an expert witness, that he had an undisclosed cash hoard of $375,000.00 at the beginning of the indictment period which explained the accessions in net worth. The district court ruled the testimony of the businessman, Charles Clayton, inadmissible hearsay.[2] Without this testimony, the defendant's accountant, Jerry Speed, could not support his summary chart with any evidence presented at the trial. The trial court instructed the jury that Speed's conclusion that the defendant had $375,000.00 in available funds at the beginning of 1978 was a hypothetical figure based on his deductive reasoning and was not to be considered as direct evidence of that fact. The trial court also prohibited Speed from testifying as to the basis of his conclusion insofar as it related to the hearsay evidence of Charles Clayton and credibility attacks on the government's witnesses. The jury convicted Scrima on all four counts of income tax evasion. On appeal, the defendant contends that these two evidentiary rulings were erroneous and, in effect, vitiated his defense, denying him the right to a fair trial.

To establish a violation of 26 U.S.C. § 7201, the government must prove, beyond a reasonable doubt (1) the existence of a tax deficiency, (2) an affirmative act constituting an evasion of the tax due, and (3) willfulness. The tax deficiency may be proved by circumstantial evidence through the net worth method. *United States v. Carter*, 721 F.2d 1514, 1538 (11th Cir.), *cert. denied*, 469 U.S. 819, 105 S.Ct. 89, 83 L.Ed.2d 36 (1984). The Supreme Court, in

---

1. The indictment alleged that Scrima underreported his 1978 taxable income by $80,357.00, his 1979 taxable income by $197,570.00, his 1980 taxable income by $32,570.00 and his 1981 taxable income by $37,617.00.

2. Clayton testified: "He said he had monies, at least $375,000.00, to get started, available in 1978 to get started up here." (Record on Appeal Vol. 15 p. 12 lines 15–16.)

upholding this means of proving willful tax evasion, succinctly described the theory:

> In a typical net worth prosecution, the Government, having concluded that the taxpayer's records are inadequate as a basis for determining income tax liability, attempts to establish an 'opening net worth' or total net value of the taxpayer at the beginning of a given year. It then proves increases in the taxpayer's net worth for each succeeding year during the period under examination and calculates the difference between the adjusted net values of the taxpayer's assets at the beginning and end of each of the years involved. The taxpayer's nondeductible expenditures, including living expenses are added to these increases, and if the resulting figure for any year is substantially greater than the taxable income reported by the taxpayer for that year, the government claims the excess represents unreported taxable income.

*Holland v. United States,* 348 U.S. 121, 125, 75 S.Ct. 127, 130, 99 L.Ed. 150 (1954).

█ Because of the dangers inherent in this circumstantial method of proof, the use of the net worth theory is circumscribed by additional burdens. For example, the government must establish opening net worth with reasonable certainty and must investigate all leads furnished by the taxpayer. *Holland,* 348 U.S. at 135–36, 75 S.Ct. at 135, 99 L.Ed. at 163; *United States v. Horton,* 526 F.2d 884, 886 (5th Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976). Furthermore, the government must prove that the net worth increases are attributable to taxable income. This burden may be carried either by proof of a likely source of taxable income or by negating all possible nontaxable sources. *Holland,* 348 U.S. at 138, 75 S.Ct. at 136–37, 99 L.Ed. at 165. *United States v. Massei,* 355 U.S. 595, 78 S.Ct. 495, 2 L.Ed.2d 517 (1958). Once the government

has established all these elements, it has proven its prima facie case, and "the defendant remains quiet at his peril." *Holland,* 548 U.S. at 139, 75 S.Ct. at 137, 99 L.Ed. at 166.

To satisfy its burden of proof under the net worth theory, the government introduced a summary chart, based on documentary and testimonial evidence, setting forth Scrima's increase in assets and his nondeductible expenditures minus his liabilities to arrive at his total net worth increases for each of the taxable years. Using these figures, the summary witness explaining the chart testified to the further calculations performed to reach Scrima's taxable income for each year of the indictment term.

The government also introduced evidence from Internal Revenue agents to establish the thoroughness of their investigation in their effort to substantially negate any possible source of nontaxable income. A likely source of taxable income to explain the gap between Scrima's increased net worth and his reported income could be inferred from the testimony of two unrelated witnesses who connected Scrima with the illegal importation of marijuana during the years 1979 and 1980.

█ Alternative methods were utilized to show Scrima's opening net worth. On the summary chart, the government employed the floating cash or dash formula where cash is an unknown but constant factor throughout the net worth period. *See United States v. Giacalone,* 574 F.2d 328 (6th Cir.), *cert. denied,* 439 U.S. 834, 99 S.Ct. 114, 58 L.Ed.2d 129 (1978) (proof of defendant-taxpayer's involvement in illegal cash business justified dash method). The government also relied in closing arguments on Scrima's statement to Revenue Agent Chambliss that he kept no more than $500.00 on hand during the four-year span.[3]

---

3. When tax evasion is proved through circumstantial evidence, the government must establish with reasonable certainty the net worth of the taxpayer at the beginning of the tax period including the amount of cash available to him. *United States v. Normile,* 587 F.2d 784 (1979). Generally, when the government relies on the

taxpayer's admissions to demonstrate his opening net worth, the government must corroborate that admission. *Id.* at 786, *citing Smith v. United States,* 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954). Where the defendant-taxpayer attempts to explain his increase in net worth by the existence of a secret cash hoard, however,

Scrima does not challenge the sufficiency of the evidence but rather contends that the erroneous evidentiary rulings of the district court crippled his attempt to rebut the government's appraisal of his opening net worth. Scrima cites as error the district court's exclusion of Charles Clayton's testimony of an out-of-court conversation with the defendant with respect to the amount of his available funds on the ground it was inadmissible hearsay. He claims that the statement was admissible under Fed.R.Evid. 803(3), 803(1), or 803(24).[4]

■ Federal Rule of Evidence 803(3) authorizes the admission of "[a] statement of the declarant's then existing state of mind, emotion, sensation or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)...." Scrima argues that the conversation was admissible to prove his state of mind that he had ample funds to invest. However, before a statement, otherwise hearsay, can be admitted under 803(3) to show the declarant's then existing state of mind, the declarant's state of mind must be a relevant issue in the case. *Prather v. Prather,* 650 F.2d 88, 90 (5th Cir. July 1981). Under these facts, Scrima's subjective belief as to his wealth is totally irrelevant. The statement was offered to prove the fact that the defendant actually had the money not that he thought he had it. Consequently, the statement was not admissible under 803(3).

■ The statement is also inadmissible as a present sense impression under 803(1). To fall within the ambit of this exception to the hearsay rule, the statement describing or explaining the event or condition must be made while the declarant was perceiving the event or condition or immediately thereafter. The underlying theory of this exception is that the "substantial contemporaneity of the event and the statement negate the likelihood of deliberate or conscious misrepresentation." *United States v. Peacock,* 654 F.2d 339, 350 (5th Cir. Aug. 1981), *cert. denied,* 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 344 (1983). The inapplicability of this rule is obvious.

■ Scrima next sought to admit Clayton's statement under the residual hearsay exception codified in Fed.R.Evid. 803(24). The case law of this circuit requires that five conditions be met to admit hearsay evidence pursuant to this exception. There must be notice, guarantees of trustworthiness, materiality, probativeness and a meeting of the interests of justice by introducing such evidence. *United States v. Parker,* 749 F.2d 628, 633 (11th Cir.1984); *United States v. Mathis,* 559 F.2d 294, 298

---

the government is not required to corroborate the taxpayer's statement with respect to his cash on hand at the beginning of the tax period. After everything possible is done to verify the opening net worth, the issue of the amount of the defendant's cash hoard is properly submitted to the jury. *United States v. Wilson,* 647 F.2d 534, 536 n. 1 (5th Cir. Jun. 1981).

4. Fed.R.Evid. 803 provides in relevant part:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(1) Present Sense impression
A statement describing or explaining an even or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

....

(3) Then existing mental, emotional, or physical condition
A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health),

but not including a statement of memory or belief to prove the fact remembered or believed....

....

(24) Other exceptions
A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

(5th Cir.1977). While the failure of the defendant to comply with the notice requirement is not fatal absent a showing that the government suffered harm and lacked "a fair opportunity to meet the statements" *Parker*, 749 F.2d at 633, the district court properly excluded the statement since it lacked the requisite guarantees of trustworthiness and probativeness. The reliability of the statement is open to question because of the possibility that Scrima exaggerated his available funds to impress a future business associate. Moreover, the statement does not indicate that Scrima has $375,000.00 concealed in a cash reserve but could refer to a line of credit or expected returns on illegal activities. Furthermore, section 803(24) would not be applicable to Clayton's testimony because the defendant made no showing that reasonable efforts could not have produced a witness with personal knowledge of Scrima's available funds at that time. *Elizarraras v. Bank of El Paso*, 631 F.2d 366, 374 n. 24 (5th Cir.1980). Obviously, the defense sought to place the defendant's remarks before the jury without subjecting them to scrutiny of cross-examination. This is precisely what is forbidden by the hearsay rule. *United States v. Willis*, 759 F.2d 1486, 1501 (11th Cir.), *cert. denied*, — U.S. ——, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985).[5]

Scrima urges as a second ground of reversible error that the trial court abused its discretion by improperly limiting the testimony of his expert, Jerry Speed, under Fed.R.Evid. 703. Speed testified that in his opinion the defendant had available funds of $375,000.00 at the beginning of the indictment period. During lengthy voir dire, Speed admitted that the ultimate basis for his conclusion that Scrima's increased net worth was due to the expenditure of funds equal to $375,000.00 available to him before 1978 was

"the non-testimony of source of income or availability of funds during that period of time other than the funds being on hand." (ROA vol. 16 p. 61 lines 15–18.) Speed sought to testify regarding a chart similar to the summary chart utilized by the government to illustrate Scrima's accession in net worth. Speed's chart, however, showed a cash availability of $375,000.00 at the beginning of the indictment period which accounted for nearly all of the defendant's discrepancies. The district court, perhaps in an abundance of caution to preserve the defendant's rights, admitted the chart and Speed's testimony but gave the following cautionary instruction to the jury:

> ... it is my understanding that this witness who appears before you as an expert witness ... has reached the hypothetical conclusion on funds at hand as a result of deductive reasoning, and the hypothetical of the funds on hand which he's reached has not been tendered as a result of evidence that has been received during the course of this trial.

(ROA 17 p. 14 lines 1–10.) At the request of the government, the district court later reiterated the instruction to the jury. (ROA 17 p. 47 lines 11–21.)

■ Scrima complains that the district court's cautionary instructions to the jury were erroneous as a matter of law and unduly prejudiced his defense. The law is clear, however, that evidence summaries, such as Speed's chart, must be supported by evidence previously presented to the jury, *United States v. Diez*, 515 F.2d 892 (5th Cir.1975), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 780, 46 L.Ed.2d 641 (1976). Since the defense could not point to any admissible evidence to support the $375,000.00 in available funds shown on the chart, we find no error in the trial court's admonitions to the jury.

---

5. The defendant complains that the statement should not have been stricken, even if hearsay, because the government failed to make a timely objection. The record discloses, however, that the government's previous hearsay objection to Clayton's testimony as to the defendant's statements regarding his background and financial posture was overruled just prior to the statement in issue. Since the government also ad-

vanced arguments asking the trial court to change its position in a contemporaneous manner, the district court did not err in striking the hearsay testimony. *See generally, Murphy v. City of Flagler Beach*, 761 F.2d 622, 626 (11th Cir.1985) (subsequent proffer at evidentiary conference satisfied purposes of contemporaneous objection and proffer rule which include a chance for trial judge to correct errors).

The defendant further argues that Speed did not testify merely as a summary witness but qualified as an expert accountant. Since Fed.R.Evid. 703 [6] allows an expert to testify based on facts otherwise inadmissible in evidence, Scrima maintains that the trial court erred in refusing to allow Speed to refer to the hearsay statement of Charles Clayton as a basis for his opinion. Rule 703, however, is not an open door to all inadmissible evidence disguised as expert opinion. Although experts are sometimes allowed to refer to hearsay evidence as a basis for their testimony, such hearsay must be the type of evidence reasonably relied upon by experts in the particular field in forming opinions or inferences on the subject. *United States v. Cox*, 696 F.2d 1294 (11th Cir.), *cert. denied*, 464 U.S. 827, 104 S.Ct. 99, 78 L.Ed.2d 104 (1983). Scrima made no showing that qualified accountants customarily rely on statements to casual business acquaintances when calculating net worth.

The district court afforded Speed wide latitude to criticize the net worth theory and to point out what he perceived to be inconsistencies in the government's case against the defendant. The expert's testimony was precluded only where he sought to rely on Clayton's stricken testimony or on his conclusions about the veracity of the government's witnesses to support his opinion. Since assessing the credibility of witnesses is exclusively within the province of the jury, opinion testimony was properly excluded. *Steinberg v. Indemnity Ins. Co. of North America*, 364 F.2d 266 (5th Cir. 1966); *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir.1985) (expert testimony properly excluded where expert could offer nothing beyond understanding and experience of average citizen). Due to the limited probative value of Speed's testimony, we find no error in the parameters placed upon his testimony by the trial court and no resulting prejudice to the defendant. *See Construction Aggregate Transport,*

*Inc. v. Florida Rock Industries, Inc.*, 710 F.2d 752, 789 (11th Cir.1983); *Cunningham v. Rendevous, Inc.*, 699 F.2d 676, 678 (4th Cir.1983).

The defendant's convictions are

AFFIRMED.

6. Fed.R.Evid. 703 provides:
   Bases of Opinion Testimony by Experts
   The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to

him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.