STATE OF NEBRASKA, APPELLEE, v. WARD W. HAYDEN, APPELLANT.
466 N.W.2d 66

Filed February 22, 1991.    No. 89-1354.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Robert M. Spire, Attorney General, and Denise E. Frost for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Ward W. Hayden appeals from a determination by the district court that his present state of dangerousness requires continued confinement at the Lincoln Regional Center. The court made this determination following a hearing pursuant to Neb. Rev. Stat. § 29-3703 (Reissue 1989). That statute provides for annual review of the mental condition of persons who have been found not responsible for crimes because of insanity and have been confined after a determination of their dangerousness under Neb. Rev. Stat. §§ 29-3701 and 29-3702 (Reissue 1989). We reverse the finding of the district court and remand for a new hearing.

The facts leading up to appellant's confinement in the regional center are the following: On October 10, 1987, appellant stabbed his ex-wife with a knife, causing a deep laceration in her buttock and the rear of her upper thigh. He was charged with second degree assault and use of a knife to commit a felony. After a bench trial on March 16 and April 4, 1988, appellant was acquitted by reason of insanity. On April 5, 1988, the trial judge found probable cause to believe the appellant was dangerous by reason of mental illness or defect, as demonstrated by an overt act or threat, and ordered appellant confined to the Lincoln Regional Center for a 90-day evaluation, pursuant to § 29-3701.

Pursuant to § 29-3701, Dr. Woytassek of the regional center prepared an individualized treatment plan, a statement of dangerousness, and a statement of the conditions of confinement and treatment necessary to achieve the purposes of the plan. These documents were prepared based upon Dr. Woytassek's own interviews and observations and based upon written reports and records of other staff personnel at the regional center. The reports prepared by Dr. Woytassek were submitted to the district judge prior to the § 29-3702 initial commitment hearing as provided for under § 29-3701.

Appellant also had a separate evaluation undertaken by an expert of his own choice, pursuant to § 29-3701(6).

At the initial commitment hearing required by § 29-3702, Dr. Woytassek testified as to the results of the evaluation and the content of the treatment plan. The court found that there was clear and convincing evidence that appellant was dangerous by reason of mental illness or defect, as demonstrated by an overt act or threat, and ordered that the appellant be confined to the Lincoln Regional Center. That order was affirmed by this court. See *State v. Hayden*, 233 Neb. 211, 444 N.W.2d 317 (1989) (*Hayden I*).

On November 3, 1989, this matter came before the district court for an annual review hearing on the status of the appellant, pursuant to § 29-3703. As had been done prior to appellant's initial commitment hearing under § 29-3702, the court was presented in advance with the same types of specific documents and reports as are described in § 29-3701. On the second page of the records received by the court, 12 names appear under the heading "Present". The persons named include two psychiatrists, a psychologist, a social service worker, six nurses, an activities coordinator, and an "MDSO Program Coordinator." Under the heading "Introduction" appears the statement "This staffing is being held to formulate a report for the next review hearing set for Thursday, September 7, 1989, at 1:30 p.m., in Douglas County District Court." The records further contain a social service report, a psychological evaluation, a ward report, a nurses report, an activities report, a psychiatric interview, a psychiatric diagnosis, and findings. The fourth page is entitled "Requirements Pursuant to Neb. Rev. Stat., Sec. 29-3703, Supp. 1985," and contains sections entitled "Statement Of Dangerousness," "Least Restrictive Treatment Setting," and "Privileges Requested." The records then continue with 10 pages entitled "Lincoln Regional Center Master Treatment Plan," which contain notes signed and dated by a number of people, usually under the headings "Measurable Objective(s)" and "Target Dates." The dates on many of the notations show that those notations were made prior to appellant's original commitment hearing under § 29-3702. Attached to all of this is

a cover letter addressed to Judge Murphy and signed by Drs. Charles E. Richardson and William R. Stone. The letter states in part:

> As you will note, Mr. Hayden continues to be mentally ill and dangerous by virtue of his diagnosis and his history and actions prior to commitment. Mr. Hayden further lacks insight into the seriousness of his problems, he continues to exhibit diminished impulse control except in highly supervised situations, and he has been uncooperative with treatment.
>
> If you are in need of further information please contact either myself or Dr. Stone . . . .

At the annual review hearing held November 3, 1989, the State began by offering the report from the regional center into evidence. This dialog followed:

> THE COURT: Let's make an offer of the exhibit so that we've got that first. This is a hearing on the defendant's application to be released; is that correct?
>
> MR. MUNNELLY: That's correct. It's an annual review hearing.
>
> THE COURT: Annual review hearing. Does The State have anything to offer as far as exhibits?
>
> MR. COOPER: Yeah, the State would offer Exhibit #1, which is a copy of the report that was sent to The Court in August or on or about August 1st, 1989, and it has a cover letter from Drs. Stone and Richardson, a diagnosis, Statement of Dangerousness, and Treatment Plan. I would offer that.
>
> MR. MUNNELLY: I'm going to object on the basis that the report itself contains numerous summaries of various people who are employed in the regional center who are not going to be here to testify. Further, without a sufficient foundation from whoever the State's witnesses to be as to whether or not these are the type of reports or that's the—this is the type of information which he normally relies upon in the ordinary course of his profession, I think there has been insufficient foundation. And I'm not even sure—I—I believe Dr. Stone's not employed at the regional center. He works on an

independent contract basis. Well, I don't know if Dr. Stone knows these people, has ever seen them, or ever met them before, people who are contained within this report. So I'd object on relevancy and a foundation basis.

MR. COOPER: Well, I don't think there is a foundational requirement. The statute requires the regional center to submit a report to The Court, and The Court has received the original report.

THE COURT: I'll overrule the objection then for the record and receive the report of the regional center, the annual report, which I'm sure they're required to make—

MR. COOPER: Yes.

THE COURT: —by statute, and Exhibit 1 is received.

After the exhibit was received, pursuant to an agreement of the parties and with the permission of the court, the appellant was allowed to put on a witness before the State's case, because the witness would not be available that afternoon. The subpoenaed witness was Ross Henke, a staff psychiatric social worker at the regional center who had seen the appellant on approximately 60 occasions. Henke's testimony was generally favorable to appellant. Henke testified that since the appellant had been admitted to the regional center, he had never been psychotic or delusional, nor had he ever been prescribed medication.

When the time came for the State to present its evidence, counsel stated, "The State has presented its evidence." The State chose to rest based solely on the strength of exhibit 1.

Appellant then called his own expert, who had examined appellant on two occasions. Appellant and appellant's father also testified as witnesses.

The State then called Dr. Stone, one of the two persons to sign the cover letter of exhibit 1, as a rebuttal witness. He testified that he had seen appellant on several occasions while serving as a consulting psychologist to the regional center on a contract basis. In his testimony he referred to records found in exhibit 1, as well as to other evaluations, and concluded that appellant should remain confined at the regional center in order to assure public safety.

At the conclusion of the testimony, the judge reserved ruling.

Five days later he issued an order that Hayden's commitment be continued. The order stated that "the conditions set forth in the report . . . marked as Exhibit Number 1 and incorporated by reference and the treatment proposed in said report [are] hereby approved by the Court."

Hayden timely filed this appeal. In his first assignment of error, he alleges that the district court erred in allowing exhibit 1 over objection. At oral argument appellant's counsel asserted that the statutory procedures for an annual review hearing under § 29-3703 are not the same as the procedures for original commitment under §§ 29-3701 and 29-3702. He contended that allowing the State to introduce records at the review hearing without following rules of evidence, and without allowing appellant to confront and cross-examine those testifying against him, deprived him of rights guaranteed under Neb. Rev. Stat. § 29-3704 (Reissue 1989).

Section 29-3703 provides:

(1) The court which tried a person who is found not responsible by reason of insanity shall annually and may upon its own motion or upon motion of the person or the prosecuting attorney, review the records of such person and conduct an evidentiary hearing on the status of the person.

(2) If as a result of such hearing the court finds that such person is no longer dangerous to himself, herself, or others by reason of mental illness or defect, and will not be so dangerous in the foreseeable future, the court shall order such person unconditionally released from further confinement. If the court does not so find, the court shall order such person returned to an appropriate facility under an appropriate treatment plan and conditions of confinement. The court may place the person in a less restrictive setting only if it finds that such placement is consistent with the safety of the public.

Section 29-3704 provides:

At each hearing conducted pursuant to sections 29-3701 to 29-3703, the person shall be entitled to assistance of counsel and such additional rights as are guaranteed by the laws and Constitution of the State of Nebraska and by

the United States Constitution.

It should be noted that the drafters of § 29-3703 chose not to include the same specifically enumerated and detailed requirements for submitting reports to the court as are mandated by § 29-3701. Section 29-3703 merely directs the court to "review the records of such person and conduct an evidentiary hearing on the status of the person." The statute does not specify what those "records" consist of, and it does not require that the court be furnished with any evidence prior to the hearing. Therefore, we find that the State and the district court erred in believing that the specific provisions of § 29-3701 are somehow grafted onto the phrase "the records" in § 29-3703.

Section 29-3703 contemplates that the court may review some "records" of one acquitted on grounds of insanity before determining whether the confinement of such a person should be continued after an annual review hearing. However, evidence may not be introduced without regard to the statutory and constitutional rights of the appellant. This court recently stated in *Tulloch v. State, ante* p. 138, 143, 465 N.W.2d 448, 452 (1991), that § 29-3704 ensures "a full panoply of constitutional rights for the individual throughout the various hearings." These rights include adherence by the court to the Nebraska Evidence Rules and the right of the appellant to confront and cross-examine adverse witnesses.

In *Hayden I*, appellant claimed a violation of the Nebraska Evidence Rules when the State's expert was allowed to introduce the specific reports required by § 29-3701 into evidence over a hearsay objection. This court held that the objection was unwarranted, because § 29-3701 "requires that evaluations and treatment plans submitted to the court 'include the facts upon which conclusions stated therein are based,' " and because the reports were "foundation for Dr. Woytassek's diagnosis and opinion that defendant was mentally ill and dangerous." *Hayden I* at 215, 444 N.W.2d at 321. In that case, the court considered the reports for the purpose of explaining the basis for Dr. Woytassek's opinion. In the present case, the reports submitted by the State are hearsay because they were submitted to prove the truth of the matter asserted therein and

not for the purpose of explaining any expert's direct testimony.

In *Gibson v. City of Lincoln*, 221 Neb. 304, 376 N.W.2d 785 (1985), we held that rule 703 of the Nebraska Evidence Rules allows experts to rely on hearsay facts or data reasonably relied upon by experts in the field as a basis for their opinion. In that case a physician relied upon hearsay data in giving his expert opinion in court. This court held, however, that it was improper to allow the report, offered for its truth and containing the hearsay data, directly into evidence.

In *Hayden I*, the reports were allowed directly into evidence. They were not hearsay, however, because they were accepted for the purpose of explaining the basis for the expert's direct testimony. This distinction was recognized and explained in *People v. Anderson*, 113 Ill. 2d 1, 495 N.E.2d 485 (1986). In that case a psychiatric expert testified, based in part on hearsay material, regarding the defendant's sanity. The trial court allowed the testimony, based on hearsay material reasonably relied upon by experts in the field, under Fed. R. Evid. 703. The trial court refused to allow the underlying reports into evidence. The Illinois Supreme Court emphasized in remanding the cause that the reports were not hearsay if offered to explain the basis of the expert's opinion, and not for the truth of the reports themselves. The court stated that it would be proper for a jury to receive the reports with a limiting instruction advising the jurors to consider the reports only for evaluating the basis of the expert's opinion.

At an annual review hearing pursuant to § 29-3703, as under an initial commitment proceeding pursuant to § 29-3701, the court may receive records for the purpose of providing the basis for expert witnesses' opinions. In this case the State relied exclusively on the reports as proof of the issue before the court, without testimony except on rebuttal. Because the State provided no witness to lay foundation and no witness whom the appellant could confront and cross-examine, the appellant was denied due process. Due process in review hearings is guaranteed to appellant under § 29-3704. Because of this deficiency the State could not meet its burden of proving by clear and convincing evidence that the appellant required continued confinement at the regional center. See *Tulloch v.*

*State, supra.*

In addition to providing that the court "review the records of such person and conduct an evidentiary hearing on the status of the person," § 29-3703 requires that the court "shall order such person returned to an appropriate facility under an appropriate treatment plan and conditions of confinement" if the court cannot find the person no longer dangerous. Because the statute provides that the court must authorize a treatment plan, it is proper that the State recommend a treatment plan, provided that the State allows the person being recommitted an opportunity to confront and cross-examine the State's witness presenting the plan regarding the plan's content. In addition, the court could consider any plan which the appellant's expert might propose. The court may then choose to adopt either plan, or may order a treatment plan and conditions of confinement which the court deems appropriate. Because the State failed to meet its burden of proving by clear and convincing admissible evidence that the appellant requires continued confinement at the regional center, this cause is remanded for a new review hearing. Because the admission of exhibit 1 requires a reversal and remand, we need not consider appellant's other assignments of error.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.