ADAMS BANK & TRUST, APPELLANT AND CROSS-APPELLEE, V. EMPIRE FIRE AND MARINE INSURANCE COMPANY, APPELLEE AND CROSS-APPELLANT.

506 N.W.2d 52

Filed October 1, 1993.    No. S-91-586.

Robert B. Reynolds and J. Blake Edwards, of McGinley, Lane, Mueller, O'Donnell & Reynolds, P.C., for appellant.

Susan C. Williams and Terrance O. Waite, of Murphy, Pederson & Waite, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ.

BOSLAUGH, J.

This is an action by the plaintiff, Adams Bank & Trust, against the defendant, Empire Fire and Marine Insurance Company, for recovery under a Nebraska motor vehicle, trailer, or motorcycle dealer's bond in which Fuller Company, Inc., doing business as Fuller Motor Company (Fuller), was the principal and the defendant was the surety. The bond was issued pursuant to Neb. Rev. Stat. § 60-1419 (Reissue 1988), which provides in part that a licensed dealer will fully indemnify any person or other dealer by reason of any loss suffered because of the dealer's misappropriation of any funds belonging to a purchaser.

Fuller is an automobile dealership located in Ogallala, Nebraska. The plaintiff provided floor plan financing for Fuller's used cars and operating expenses through an open-ended note secured by a security agreement and financing statement. As part of the floor plan arrangement, the plaintiff held the certificates of title for Fuller's inventoried vehicles.

The security agreement required Fuller, when requested, to "deliver to Bank, promptly upon receipt, all proceeds of its inventory received by Borrower (except goods), including proceeds of the accounts referred to above, in the exact form in which they are received."

Norman Fuller, the owner of Fuller, testified that he had done business exclusively with the plaintiff for 17 years and that it was routine practice for the proceeds from sales of motor vehicles to be deposited in the dealership account rather than to be paid directly to the plaintiff. The plaintiff admitted that it had permitted this course of conduct and that, occasionally, 5 to 6 weeks would pass between the time that a vehicle was sold and the time it released the title to that vehicle.

The plaintiff monitored the vehicles which it floor planned through periodic inventory inspections. In March 1985, the plaintiff suspected that Fuller had sold some vehicles "out of

trust"—a failure to pay the indebtedness on a vehicle sold—and called Fuller's line of credit, demanding payment of its debt in full. When payment was not made, the plaintiff set off Fuller's checking account in the amount of $39,695.96 on April 10, 1985.

Six vehicles which had been floor planned for $46,100 were sold out of trust in March 1985. The plaintiff did not release the titles to these vehicles until June 6, 1985.

In *Adams Bank & Trust v. Empire Fire & Marine Ins. Co.*, 235 Neb. 464, 455 N.W.2d 569 (1990) (*Adams Bank & Trust I*), this court held that the evidence established as a matter of law that there was a misapplication by Fuller of funds belonging to purchasers of vehicles, since the balance in Fuller's account at the time of the setoff was less than the floor planned value of the vehicles. The cause was remanded to the Keith County District Court for further proceedings.

After the remand to the district court, the defendant offered $8,538.72 ($6,404.04 plus $2,134.68 as an attorney fee) to settle the case pursuant to Neb. Rev. Stat. § 25-901 (Reissue 1989) on January 17, 1991. The plaintiff declined the offer.

After reviewing the bill of exceptions, the briefs of the parties, and this court's opinion in *Adams Bank & Trust I*, on February 20, 1991, the district court found that the only damages proved by the plaintiff which were covered by the bond were in the amount of $6,404.04, the difference between the amount for which the vehicles were floor planned and the amount the plaintiff realized from the setoff of Fuller's checking account. The district court also awarded the plaintiff interest from the date of judgment and costs. The district court's order was filed on February 27.

The defendant filed a motion for new trial on March 4, 1991. On April 23, the plaintiff filed a motion for attorney fees pursuant to Neb. Rev. Stat. § 44-359 (Reissue 1988). On May 2, the defendant filed a motion for an award of costs and attorney fees pursuant to § 25-901.

In an order filed on May 10, 1991, the district court overruled the defendant's motion for new trial, awarded the plaintiff $2,000 in attorney fees, and overruled the defendant's motion for costs and attorney fees. The plaintiff has appealed

from the judgment for $6,404.04 and the award of $2,000 in attorney fees. The defendant has cross-appealed.

The plaintiff assigns as error the district court's failure to include in its award of damages $17,491.94 which was paid by the plaintiff as a result of this court's decision in *Blanchette v. Keith Cty. Bank & Trust Co.*, 231 Neb. 628, 437 N.W.2d 488 (1989); the district court's failure to award interest on the judgment from the date of April 5, 1988; and the district court's failure to award the plaintiff $5,607.43 for reasonable attorney fees.

On cross-appeal, the defendant assigns as error the district court's award of damages to the plaintiff, the district court's award of attorney fees to the plaintiff, and the district court's failure to award the defendant attorney fees pursuant to § 25-901.

In *Blanchette*, the plaintiff was the owner of a car which Fuller had sold on consignment. Blanchette brought an action against the plaintiff in this case, Adams Bank & Trust, for the conversion which resulted when the bank set off Fuller's account. Part of the funds in Fuller's account included proceeds from the sale of Blanchette's car. This court held that the bank had wrongfully applied funds belonging to Blanchette to set off against Fuller's indebtedness to the bank and ordered the bank to pay Blanchette $11,134, the amount of money in Fuller's account belonging to Blanchette, plus $6,357.94 interest. The plaintiff contends that the trial court should have included those amounts in its award of damages.

At the time the plaintiff set off Fuller's account, it contained $39,695.96. Of that amount, $11,134 belonged to Blanchette. If the plaintiff had not wrongfully refused to pay the $11,134 to Blanchette, there would have been $28,561.96 in the account at the time of the setoff. Accordingly, in this case, the plaintiff's damages would be $17,538.04, the difference between $46,100, the amount due for the vehicles floor planned and sold out of trust, and $28,561.96, the balance that would have remained in Fuller's account at the time of the setoff.

The interest paid by the plaintiff as a result of this court's decision in *Blanchette* is not a loss suffered by the plaintiff due to Fuller's misappropriation of funds belonging to purchasers

and is not recoverable under § 60-1419.

Next, the plaintiff argues that the trial court erred in failing to award interest on the judgment from April 5, 1988, the date of the trial court's order following the original trial of this case.

Neb. Rev. Stat. § 45-103.01 (Reissue 1988) provides that interest on judgments for the payment of money accrues from the date of rendition of the judgment. In this case, no damages were determined until the trial court's judgment of February 21, 1991, and the trial court did not err by not awarding interest prior to its order of February 21.

Finally, the plaintiff claims that the trial court erred because it did not award $5,607.43, the amount requested by the plaintiff in its motion for attorney fees.

The plaintiff was awarded $2,000 in attorney fees as provided by § 44-359. The amount of attorney fees awarded pursuant to § 44-359 is a matter within the discretion of the trial court. *Smith v. Union Ins. Co.*, 218 Neb. 797, 359 N.W.2d 113 (1984). The trial court did not abuse its discretion in its award of attorney fees to the plaintiff.

On cross-appeal, the defendant argues that the trial court erred in awarding damages to the plaintiff because the court did not consider the affirmative defense that the plaintiff by its conduct had waived its security interest in Fuller's inventory and proceeds; thereby, any loss the plaintiff suffered was due to its course of conduct in dealing with Fuller.

Ordinarily, a surety is released pro tanto for the value of any security released by the creditor. *First State Bank v. Peterson*, 205 Neb. 814, 290 N.W.2d 634 (1980). However, the plaintiff's lien under its security agreement with Fuller, was not valid as to the purchasers in good faith of automobiles sold out of inventory by Fuller in the ordinary course of business. See, Neb. Rev. Stat. § 60-110 (Reissue 1988); *State v. General Insurance Company of America*, 179 N.W.2d 123 (N.D. 1970).

In *Ramsey Nat. Bk. & Tr. Co. v. Subur. Sales & Serv.*, 231 N.W.2d 732 (N.D. 1975), the dealer financed its inventory through the bank, and in the course of its dealings with the dealer, the bank loaned the dealer the purchase price of a vehicle and kept the vehicle's title until the dealer paid the proceeds of the vehicle's sale. After the bank had been paid, it would

transfer the vehicle's title to the purchaser. The bank discovered that the dealer had sold 13 vehicles out of trust and was forced to release the titles to the purchasers after they brought an action against the bank. The bank then brought an action against the dealer's surety to recover its losses on the dealer's bond.

The North Dakota Supreme Court held in *Ramsey* that although the bank had an unperfected security interest in the dealer's inventory, it was entitled to recover its loss under the bond because the surety failed to show how the bank's status as an unsecured creditor affected its ability to recover under the bond.

In the present case, the defendant has failed to show how the plaintiff's course of dealing with Fuller affected its ability to recover the purchasers' funds which were misappropriated by Fuller.

It is unnecessary to consider the defendant's remaining assignments of error.

The judgment should be modified to award the plaintiff judgment in the amount of $17,538.04. The plaintiff is allowed the sum of $3,000 for the services of its attorneys in this court.

The cause is remanded with directions to modify the judgment of the district court in conformity with this opinion.

REMANDED WITH DIRECTIONS.

SHANAHAN, J., not participating.