DANIEL KOEHLER, PERSONAL REPRESENTATIVE OF THE ESTATE OF TRACY L. KOEHLER, DECEASED, APPELLEE, V. FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, APPELLANT.

566 N.W.2d 750

Filed June 27, 1997.   No. S-94-1160.

Michael A. England and Stephen L. Ahl, of Wolfe, Anderson, Hurd, Luers & Ahl, for appellant.

Eugene L. Hillman and Patricia McCormack, of McCormack, Cooney, Hillman & Elder, for appellee.

CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and ROWLANDS, D.J.

WRIGHT, J.

Daniel Koehler (Koehler), as the personal representative of the estate of his daughter, Tracy L. Koehler (Tracy), sought benefits under the uninsured motorist provision in his automobile insurance policy with Farmers Alliance Mutual Insurance Company (Farmers). Following trial, the jury awarded Koehler $25,000, and the district court awarded him attorney fees. The district court overruled Farmers' motion for new trial, and Farmers appealed.

## SCOPE OF REVIEW

In all proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. See, *Sedlak Aerial Spray v. Miller*, 251 Neb. 45, 555

N.W.2d 32 (1996); *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996).

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld on appeal in the absence of an abuse of that discretion. *Menkens v. Finley*, 251 Neb. 84, 555 N.W.2d 47 (1996).

The amount of attorney fees awarded pursuant to Neb. Rev. Stat. § 44-359 (Reissue 1993) is a matter within the discretion of the trial court. *Adams Bank & Trust v. Empire Fire & Marine Ins. Co.*, 244 Neb. 262, 506 N.W.2d 52 (1993).

On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion. *DeVaux v. DeVaux*, 245 Neb. 611, 514 N.W.2d 640 (1994); *In re Estate of Watkins*, 243 Neb. 583, 501 N.W.2d 292 (1993).

## FACTS

On May 10, 1990, Tracy left her parents' home near Lewiston, Nebraska, sometime before 9 p.m. and drove west on a gravel road. At that time, Jacqueline Murphy was driving east on the same road. As Murphy crested the top of a hill, she saw Tracy's vehicle and applied her brakes, which subsequently locked. The front driver's side of Tracy's vehicle collided with the front driver's side of Murphy's vehicle. The force of the impact spun Tracy's vehicle into a ditch on the north side of the road and Murphy's vehicle into a ditch on the south side of the road. Tracy died as a result of this accident.

Koehler, as the personal representative of Tracy's estate, brought suit against Murphy in the district court for Pawnee County in May 1992, alleging that Murphy was negligent in the operation of her vehicle. The vehicle driven by Tracy was owned by Koehler, and Koehler's insurer, Farmers, filed a motion for leave to intervene as an interested party because Koehler's insurance policy included uninsured motorist coverage. Farmers was permitted to intervene, and it moved to bifurcate the trial. Murphy was subsequently dismissed from the action. A jury trial was held in September 1994.

At trial, Koehler called George Lynch, an accident reconstruction expert. Lynch testified that in forming his opinion he relied upon materials that were of the type normally relied upon

by accident reconstructionists to formulate opinions as to the cause of an accident. He stated that he had relied on copies of accident reports from the Pawnee County Sheriff's Department and the Nebraska State Patrol. Using those reports, Lynch prepared exhibit 4, which reflects the position of the two vehicles after the collision and the measurements contained in the police reports. Exhibit 4 was admitted over Farmers' objections that it lacked foundation and was hearsay. Neither party requested a limiting instruction with respect to exhibit 4.

The jury returned a verdict for Koehler in the amount of $25,000. Following the verdict, Koehler filed a motion and application for attorney fees under § 44-359, which allows the court to award attorney fees in cases brought upon an insurance policy where a judgment is rendered against the insurance company. The trial court found that Farmers did not meet its burden of showing that the requested amount was unreasonable and approved the payment of $29,511.41 in attorney fees. Farmers filed a motion for new trial, which was overruled. Farmers timely appealed.

## ASSIGNMENTS OF ERROR

On appeal, Farmers alleges that the trial court (1) erred in overruling Farmers' objection to the introduction of the investigating law enforcement officers' measurements through the admission of an exhibit prepared by Koehler's expert witness, (2) erred in overruling Farmers' motion for new trial, and (3) abused its discretion in awarding excessive attorney fees.

## ANALYSIS

### ADMISSION OF EXHIBIT 4

Lynch testified that he had been provided copies of the Pawnee County sheriff's report and the supplemental reports made by Nebraska State Patrol Trooper Stanley Funkey and a Trooper King, which contained diagrams, measurements, and photographs of the accident scene. Lynch stated that based on these reports, he prepared a drawing of the scene of the accident (exhibit 4) which incorporated numerous measurements taken from the reports and depicted the position of the two vehicles after the collision. Lynch explained that these reports were of

the type normally relied upon by experts in his field in reaching their opinions and that reference to exhibit 4 would be helpful to him in explaining his testimony to the jury.

Koehler offered exhibit 4, and Farmers objected based on foundation and hearsay. The trial court overruled the objection and admitted exhibit 4. Lynch then testified that Murphy's vehicle was 2 feet over the centerline when the skid marks appeared on the roadway and that Tracy's vehicle was 3 to 4 inches to the right of the center of the roadway at the point of impact.

Farmers alleges that the trial court erred in overruling its objection to the introduction of exhibit 4. Farmers contends that exhibit 4 should not have been admitted because it included measurements taken from the investigating law enforcement officers' reports and, therefore, contained hearsay.

Koehler argues that exhibit 4 was introduced to provide the basis for Lynch's testimony and was not offered to prove the truth of the matter asserted. Thus, Koehler argues, exhibit 4 was admissible as nonhearsay, even though it may have contained hearsay that was otherwise inadmissible.

In all proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. See, *Sedlak Aerial Spray v. Miller*, 251 Neb. 45, 555 N.W.2d 32 (1996); *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996).

We have emphasized that a testifying expert may not merely act as a conduit for hearsay, and if the trial court in its discretion determines that the introduction of the basis for the expert's testimony will advance such a purpose, the trial court has discretion to refuse to admit such evidence. See *Stang-Starr v. Byington*, 248 Neb. 103, 532 N.W.2d 26 (1995).

In *Stang-Starr*, the plaintiff's expert testified regarding the standard of care with respect to a particular gynecological procedure. The expert testified that his opinion was grounded upon the basis of his knowledge obtained from medical textbooks, medical literature, and personal experience. The plaintiff then attempted to offer a medical bulletin, along with material found in a number of medical textbooks concerning gynecology, upon

which the expert relied. In an offer of proof, the plaintiff's counsel stated that if permitted to testify, the expert would identify each text as authority in his field, identify each text as a basis of his opinion, and identify and read specific passages of material upon which he relied in testifying. The defendant objected on the grounds of hearsay, and the objection was sustained.

On appeal, we affirmed the trial court's sustaining of the objection to the offer of the medical texts and literature on the basis that they were hearsay. We noted that when the plaintiff attempted to offer the medical texts and literature into evidence as the basis of the expert's testimony, the plaintiff was in fact attempting to use the expert as a vehicle for introducing hearsay into the record. We affirmed the trial court's discretion in rejecting such a technique:

> Nor does the fact that the out-of-court statements contained in the authorities were offered in the guise of forming the bases for the testifying experts' opinions alchemically transmute them from inadmissible hearsay into admissible nonhearsay. When Stang-Starr attempted to elicit testimony from her witness concerning what a particular authority has reported about an issue, she was attempting to use her witness to recite the opinion of each authority cited instead of eliciting her witness' expert opinion derived from the witness' own knowledge and experience. The witness was merely seeking to act as a conduit for inadmissible hearsay. The recitation of a passage by a nontestifying authority, even if such is in conformity with the opinion of the testifying expert, is hearsay.

*Stang-Starr*, 248 Neb. at 110-11, 532 N.W.2d at 31. See *State v. Lundstrom*, 161 Ariz. 141, 776 P.2d 1067 (1989) (when testifying expert merely recites another nontestifying expert's opinion, expert opinion relied upon is hearsay and inadmissible). See, also, *Matter of James Wilson Associates*, 965 F.2d 160 (7th Cir. 1992) (requiring trial courts to exercise discretion to ensure that expert is not being used as vehicle for circumventing rules of evidence); *U.S. v. Scrima*, 819 F.2d 996 (11th Cir. 1987) (recognizing that Fed. R. Evid. 703 is not open door to introduction of inadmissible evidence disguised as expert opinion). Thus, it is incumbent upon the trial court to exercise its discretion in

determining whether to admit evidence offered to demonstrate the basis for an expert's testimony to ensure that such offer is not being used as a vehicle for introducing otherwise inadmissible hearsay into evidence.

Lynch testified that exhibit 4 was drawn by using the measurements of the postaccident scene, which he took from the accident reports. Lynch stated that in order to draw exhibit 4, he was not required to make any conclusions from the accident reports. Rather, the content of exhibit 4 was limited to measurements taken from the accident reports.

At the time Koehler offered exhibit 4, the measurements had not been admitted into evidence. However, any error by the trial court in receiving exhibit 4 was harmless because the measurements were subsequently admitted into evidence without objection. Farmers' witness, Funkey, testified to every measurement contained in exhibit 4 that pertains to an issue in dispute. The few measurements contained in exhibit 4 that were not covered in Funkey's testimony relate to matters which are undisputed and, therefore, could not have prejudiced Farmers.

To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted or excluded. *Hoover v. Burlington Northern RR. Co.*, 251 Neb. 689, 559 N.W.2d 729 (1997); *Thrift Mart v. State Farm Fire & Cas. Co.*, 251 Neb. 448, 558 N.W.2d 531 (1997). Testimony objected to which is substantially similar to evidence admitted without objection results in no prejudicial error. *McDonald v. Miller*, 246 Neb. 144, 518 N.W.2d 80 (1994). Farmers cannot argue that it was prejudiced by the admission of exhibit 4. Therefore, this assignment of error is without merit.

## MOTION FOR NEW TRIAL

Farmers' motion for new trial alleged the following: There was irregularity in the proceedings, excessive damages were given under the influence of passion or prejudice, the verdict was not sustained by sufficient evidence, and errors of law occurred and were excepted to by Farmers. We find that the trial court did not abuse its discretion in overruling Farmers' motion for new trial, and its assignment of error in this regard is without merit.

## ATTORNEY FEES

Following trial, Koehler moved for attorney fees, pursuant to § 44-359, which states:

> In all cases when the beneficiary or other person entitled thereto brings an action upon any type of insurance policy . . . against any company, person, or association doing business in this state, the court, upon rendering judgment against such company, person, or association, shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his or her recovery, to be taxed as part of the costs.

During argument on the motion for attorney fees, the trial court stated that the party opposing attorney fees has the burden to rebut the "presumption" that the proponent's offered amount of fees is reasonable. The proper test to be applied in determining attorney fees under § 44-359 was outlined in *National Am. Ins. Co. v. Continental Western Ins. Co.*, 243 Neb. 766, 502 N.W.2d 817 (1993). In that case, we stated that § 44-359 entitles the prevailing party to reasonable attorney fees. To determine the proper fees, it is necessary to consider

> the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services.

*National Am. Ins. Co.*, 243 Neb. at 778, 502 N.W.2d at 825. To determine what fees are reasonable, the court evaluates the aforementioned factors. There is no presumption of reasonableness placed on the amount offered by the party requesting fees.

The determination of attorney fees awarded pursuant to § 44-359 is a matter within the discretion of the trial court. See *Adams Bank & Trust v. Empire Fire & Marine Ins. Co.*, 244 Neb. 262, 506 N.W.2d 52 (1993). The trial court's use of a nonexistent presumption as to the reasonableness of the amount offered by Koehler was an abuse of discretion.

After evaluation of the factors to be considered in determining attorney fees, we modify the trial court's award of attorney fees to $17,134.59. In addition, Koehler has requested attorney

fees on appeal to this court, and they are awarded in the amount of $2,520.

## CONCLUSION

The judgment of the district court is affirmed as modified.

AFFIRMED AS MODIFIED.

WHITE, C.J., participating on briefs.

WHITE, C.J., concurring.

Although I concur with the result in this case, my disagreement with the majority's inference that the trial court erred in initially admitting exhibit 4 necessitates that I write separately.

Neb. Rev. Stat. § 27-703 (Reissue 1995) (Rule 703) states:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Rule 703 clearly states that an expert may rely on data which include otherwise inadmissible data in reaching an opinion. This court has stated that otherwise inadmissible data upon which an expert relies may be admitted on direct examination if the opponent fails to object or if the evidence is offered not to prove the truth of the matter asserted, but simply to demonstrate the basis for the expert's testimony. See, *State v. Hayden*, 237 Neb. 286, 466 N.W.2d 66 (1991) (excluding reports from evidence as inadmissible hearsay because they were offered to prove truth of matter asserted); *Capps v. Manhart*, 236 Neb. 16, 458 N.W.2d 742 (1990) (finding that expert's reference to outside literature and research, not offered to prove truth of contents, was not error when literature was not offered as independent evidence of its truth); *State v. Hayden*, 233 Neb. 211, 444 N.W.2d 317 (1989) (allowing reports into evidence and finding that said reports were not hearsay because they were admitted for purpose of explaining basis of expert's direct testimony); *Sorensen v. Lower Niobrara Nat. Resources Dist.*, 221 Neb. 180, 376 N.W.2d 539 (1985) (finding prejudicial error in admission of copy of director's order containing unidentified

expert's opinion at prior hearing in part because order was hearsay in that it was offered to prove truth of matter asserted). For a detailed discourse on Nebraska case law interpretation of Rule 703, see R. Collin Mangrum, *Opinion and Expert Testimony in Nebraska*, 27 Creighton L. Rev. 85 (1993), and The Honorable F.A. Gossett III, Judge Gossett's Nebraska Evidence Handbook (1995).

In the instant case, the trial court did not err in admitting exhibit 4, the drawing of the scene prepared by Koehler's expert witness using the reports, maps, diagrams, and measurements obtained from law enforcement reports. Rule 703 permits experts to rely on facts or data that might otherwise be inadmissible if the facts or data are of the type reasonably relied on by experts in the particular field in forming opinions. The expert testified that the reports provided to him contained the type of information on which an accident reconstructionist would normally rely in forming conclusions and opinions. Even if we accept Farmers' characterization of exhibit 4 as a recreation of the actual law enforcement reports, our case law would support its admission on direct examination in this case because it was composed of the type of information reasonably relied on by accident reconstruction experts in reaching their opinions and was not offered to prove the truth of the matter asserted, and because Koehler's expert testified that he created exhibit 4 solely to explain to the jury the underlying basis of his opinion.

The majority relies heavily on *Stang-Starr v. Byington*, 248 Neb. 103, 532 N.W.2d 26 (1995), to support its position that exhibit 4 was inadmissible. However, *Stang-Starr* is clearly distinguishable from the instant case. In *Stang-Starr*, the plaintiff attempted to have her witness read portions of a medical treatise into evidence such that she tried to use "her witness to recite the opinion of each authority cited instead of eliciting her witness' expert opinion derived from the witness' own knowledge and experience." *Id.* at 110, 532 N.W.2d at 31. We differentiated that situation from situations such as the one presented in the instant case by stating,

> "When, however, the witness has gone to many sources—although some or all be hearsay in nature—and rather than introducing mere summaries of each source he uses them

all, along with his own professional experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as an attempt to introduce hearsay in disguise." *Id.* at 111, 532 N.W.2d at 31, quoting *United States v. Williams*, 431 F.2d 1168 (5th Cir. 1970), *aff'd en banc* 447 F.2d 1285 (5th Cir. 1971), *cert. denied* 405 U.S. 954, 92 S. Ct. 1168, 31 L. Ed. 2d 231 (1972).

None of the concerns present in *Stang-Starr* were present in this case. As the majority noted, "Lynch stated that in order to draw exhibit 4, he was not required to make any conclusions from the accident reports. Rather, the content of exhibit 4 was limited to measurements taken from the accident reports." Lynch used the measurements taken from the reports along with his own professional experience to arrive at his opinion, and he created exhibit 4 to explain the basis of that opinion to the jury. Thus, I would find that the trial court, in initially admitting exhibit 4, committed no error requiring a cure through the adoptive admission analysis employed by the majority in reaching its conclusion.

GERRARD, J., joins in this concurrence.