WORLD RADIO LABORATORIES, INC., A NEBRASKA CORPORATION, APPELLEE, V. COOPERS & LYBRAND, A PARTNERSHIP, APPELLANT.

514 N.W.2d 351

Filed March 22, 1994.   No. A-93-739.

Philip A. Lacovara and Lynne M. Raimondo, of Mayer, Brown & Platt; Maureen E. McGrath; Jeff A. Anderson, of Kutak Rock; and William G. Campbell, of Rogers & Wells, for appellant.

Joseph E. Jones and Michael L. Schleich, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

SIEVERS, Chief Judge, and HANNON and WRIGHT, Judges.

HANNON, Judge.

This case comes before the court on the motion of the appellee, World Radio Laboratories, Inc., a Nebraska corporation, requesting the court to require the appellant, Coopers & Lybrand, a partnership, to increase the bond it posted to supersede the $17,040,300 judgment World Radio recovered against Coopers. Under Neb. Rev. Stat. § 25-1916(1) (Cum. Supp. 1992), the district court set the bond at $18,700,000. This bond would be adequate if that judgment draws interest of 4.54 percent under Neb. Rev. Stat. § 45-103 (Reissue 1988). However, World Radio maintains the bond is inadequate because the judgment draws interest at 14 percent under Neb. Rev. Stat. § 45-103 (Reissue 1984). We conclude that when the Legislature changed the postjudgment interest rate by 1986 Neb. Laws, L.B. 298, it specifically provided that the change applied to causes of action accruing on or after January 1, 1987. Because all the causes of action that resulted in World Radio's judgment arose before 1987, the bond is too low and should be increased.

## BACKGROUND

The judgment was entered on the jury verdict on June 18, 1993. The jury verdict awarded the following amounts for each of 4 years, as follows:

| Year | Verdict |
|------|---------|
| 1980 | $ -0- |
| 1981 | 10,300 |
| 1982 | 12,000 |
| 1984 | 17,018,000 |
| TOTAL | $17,040,300 |

On August 11, 1983, the district court set the supersedeas bond

at $18,700,000, and Coopers filed a bond of that amount on August 24. Interest on $17,040,300 at 4.54 percent per annum for 2 years is $1,547,259. Interest on $17,040,300 at 14 percent per annum for 2 years is $4,771,280. The $18,700,000 is only $1,659,700 more than the amount of the judgment principal.

## APPLICABLE STATUTES

Section 25-1916 provides that when the judgment appealed from directs the payment of money, the bond shall be in the amount of the judgment and taxable costs. The bond will also include the estimated amount of interest which will accrue between the date of the decree and final determination of the cause on appeal and the estimated costs of appeal.

Section 45-103 (Reissue 1984) provided that "[i]nterest on all decrees and judgments for the payment of money shall be from the date of the rendition thereof at the rate specified in section 45-104.01, as such rate may from time to time be adjusted by the Legislature . . . ." Neb. Rev. Stat. § 45-104.01 (Reissue 1984) provided, and still provides in its amended form under § 45-104.01 (Supp. 1993), accrual of interest at 14 percent per annum. L.B. 298 provided: "Judgment interest on decrees and judgments for the payment of money shall be fixed at a rate equal to one percentage point above the bond equivalent yield . . . ." L.B. 298 goes on to provide for the determination and distribution of the correct rate. The parties agree that the judgment rate of interest under L.B. 298 on June 18, 1993, was 4.54 percent per annum.

Section 6 of L.B. 298 is the provision that creates the principal issue. It provides: "This act shall be operative for all causes of action accruing on or after January 1, 1987." Section 7 of L.B. 298 provides: "That original section 45-103, Reissue Revised Statutes of Nebraska, 1943, is repealed."

## DISCUSSION

We do not find many cases which discuss the procedures available to test the sufficiency of a supersedeas bond. In the early case of *State v. Baxter*, 4 Neb. (Unoff.) 869, 871, 96 N.W. 647, 648 (1903), a plaintiff questioned the sufficiency of a supersedeas bond by instituting a mandamus action to compel execution of the judgment he claimed was not properly

superseded. In denying the writ, the Nebraska Supreme Court said that "[i]f the amount is insufficient, application to this court by motion in the appeal proceedings will meet the case sufficiently. *Tulleys v. Keller*, 42 Neb., 788, [60 N.W. 1015 (1894)]." In *Tulleys*, the Supreme Court found the amount of a supersedeas bond to be insufficient and ordered that a new bond be filed and approved by the clerk of the district court by a specified date. In *Kountze v. Erck*, 45 Neb. 288, 293, 63 N.W. 804, 805 (1895), the Supreme Court said:

> We entertain no doubt that this court has the power to require the penalty of the bond to be increased, and would raise the amount were we satisfied that the sum fixed by the trial court was wholly insufficient to cover the damages which the plaintiff would likely sustain if the order appealed from should be affirmed.

More recently, in *The Exchange Bank v. Mid-Nebraska Computer Services, Inc.*, 188 Neb. 673, 676-77, 199 N.W.2d 5, 7 (1972), citing *Baxter* and *Kountze* with approval, the court considered the standard of review on the issue, and held the following:

> It is concluded that in superseding a decree of foreclosure which orders the sale of land, the bond should be conditioned as set out in subsection (3) of section 25-1916, R. S. Supp., 1971, and the amount of the pledge or penalty a matter of judicial discretion; and, in appealing from a decree which directs the payment of money and also orders the sale of real estate, the trial court may require a supersedeas bond in an amount computed as specified in subsection (1) and conditioned as provided in subsections (1) and (3) of the statute.

Section 25-1916(1) provides that the supersedeas bond on appeal from an order that directs the payment of money

> shall be in the amount of the judgment, decree, or final order and the taxable court costs in the district court, plus the estimated amount of interest that will accrue on the judgment, decree, or final order between its date and the final determination of the cause in the Court of Appeals or Supreme Court and the estimated amount of the costs of appeal, such estimated interest to accrue and estimated

court costs to be determined by the trial court . . . .

In *The Exchange Bank*, the court held:

In 5A C. J. S., Appeal and Error § 1635, p. 188, it is stated: "The exercise by the trial court of its discretion with respect to * * * fixing the terms and conditions of a supersedeas bond, will not be interfered with on appeal unless there has been a manifest abuse of discretion or injustice has resulted."

188 Neb. at 676, 199 N.W.2d at 7.

On the basis of this authority, we conclude (1) an appellate court has the jurisdiction to hear and determine an appellee's motion to increase a supersedeas bond, and (2) the appellate court will not modify the district court's order setting the amount of a supersedeas bond unless it finds the district court abused its discretion.

## STANDARD OF REVIEW

Most of the questions before this court concern statutory interpretation. Statutory interpretation is a matter of law in connection with which this court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. *Sorensen v. City of Omaha*, 230 Neb. 286, 430 N.W.2d 696 (1988).

## STATUTORY INTERPRETATION

World Radio's position is simply that the plain meaning of the applicable statute requires a determination that its judgment draws interest at 14 percent per annum. Coopers puts forth several arguments by which it maintains that World Radio's interpretation of the law is in error. In summary, these arguments are: (1) The date of entry of the judgment controls the rate of postjudgment interest, (2) the "statutory note" fixing an operative date does not cause postjudgment interest rates to relate back to the date the underlying cause of action arose, (3) the legislative history supports the interpretation adopted by the trial court, (4) World Radio's interpretation would yield an absurd result, (5) a repealed statute cannot supply the rate of interest, and (6) World Radio failed to show that the trial court abused its discretion.

Coopers' first two arguments simply involve statutory

interpretation made somewhat complicated by Coopers' approach. The former § 45-103 (Reissue 1984) provided, in significant part, "[i]nterest on all decrees and judgments for the payment of money shall be from the date of the rendition thereof," and then the statute provides for the determination of the rate. In L.B. 298, the approach was changed slightly in § 1, which references § 45-103. Section 1 of the bill provides that "[j]udgment interest on decrees and judgments for the payment of money shall be fixed," and then gives the method for the determination of the rate. Section 1 does not provide for the date when interest is to begin to run, but § 2 provides that "[j]udgment interest shall accrue on decrees and judgments for the payment of money from the date of rendition of judgment until satisfaction of judgment." The Revisor of Statutes saw fit to designate § 2 of the bill as Neb. Rev. Stat. § 45-103.01 (Reissue 1988). This change in the organization of the provisions does not affect the meaning of the applicable rate of interest.

Coopers argues that since § 45-103.01 provides that judgments shall draw interest from the date of rendition, the rate of interest must be that applicable to judgments on the date of rendition. Coopers argues that the decision rendered in *Adams Bank & Trust v. Empire Fire & Marine Ins. Co.*, 244 Neb. 262, 506 N.W.2d 52 (1993), has the same effect. In that case, the plaintiff sought interest from the date it made a demand upon the defendant, and, alternatively, from the date the district court entered an original judgment that was set aside. The Supreme Court held that § 45-103.01 allowed interest from the date of rendition of the judgment that was finally entered. *Id.* Because the date from which judgment interest commences was decided does not mean that the interest rate must be set at the rate prevailing for other causes of action on the date the judgment was entered. This argument does not shine any light upon the problem.

Coopers next argues that the statutory "note" fixing an "operating date" does not cause postjudgment interest to relate back to the date the underlying cause of action arose. In connection with the argument, Coopers asserts that article III, § 27, of the Nebraska Constitution provides that legislation

passed without the emergency clause becomes effective 3 months after the Legislature adjourns and that therefore L.B. 298 would have become effective in July 1986 except that § 6 of the bill provided that the "act shall be operative for all causes of action accruing on or after January 1, 1987." Coopers argues that these words do not refer to "the underlying cause of action for malpractice[,] since that is an independent cause of action and is <u>not</u> the cause of action upon which the 'postjudgment' interest statute operates." Brief for appellant in opposition to motion to amend at 7. Coopers seems to argue that there are two causes of action, one for malpractice and another for judgment interest.

" ' "[A] cause of action consists of the set of facts on which a recovery may be had." ' " *Lewis v. Poduska*, 240 Neb. 312, 316, 481 N.W.2d 898, 901 (1992) (quoting *Lewis v. Craig*, 236 Neb. 602, 463 N.W.2d 318 (1990)). A cause of action is distinct from the remedy for that cause. A remedy is the means by which the cause of action is satisfied. *Hamlin Mach. Co. v. Holtite Mfg. Co.*, 197 Md. 148, 78 A.2d 450 (1951). L.B. 298 did not create a cause of action for judgment interest, but, rather, modified the remedy available for causes of action that accrued on or after January 1, 1987. (Coopers ignores the fact that World Radio maintains L.B. 298 did not change the interest rate on its causes of action, but simply kept the rate as it was.)

Legislative history shows that § 6 was added to L.B. 298 during floor debate. Coopers maintains that this section was added to accommodate litigants affected by §§ 3 and 4 on the matter of prejudgment interest. The wording of L.B. 298 does not give any indication that the operative date was to apply only to prejudgment interest, as by the bill's terms in § 6, "[t]his act shall be operative for all causes of action accruing on or after January 1, 1987."

"When statutory language is plain and unambiguous, no judicial interpretation is needed to ascertain the statute's meaning so that, in the absence of a statutory indication to the contrary, words in a statute will be given their ordinary meaning." *State v. Crowdell*, 234 Neb. 469, 473-74, 451 N.W.2d 695, 699 (1990). When the words in the statute are given their ordinary meaning, no interpretation is needed, and we should

not consult legislative history to discover possible hidden meanings that might contradict the plain meaning of the statute.

Coopers next argues that to accept World Radio's interpretation of the statute would yield absurd results. In support of that conclusion, it points out that World Radio's theory would require the court to examine the record in each case to determine which rate of interest would apply, and if two causes of action were joined and judgments obtained in each of them, it would be possible that these causes of action could have different applicable interest rates. Coopers' argument fails, as neither of these steps is absurd nor difficult for a court to perform.

Coopers next argues that § 7 of L.B. 298 repealed the then-existing § 45-103 and that § 6 applies only to "causes of action accruing on or after January 1, 1987." Coopers argues the repealed provision was effective immediately, but the new provision is applicable only for causes accruing on or after January 1, 1987. This, of course, would mean that any cause of action that accrued before January 1, 1987, that was not reduced to judgment before July 1986 would not be entitled to judgment interest. This result is absurd.

Neb. Rev. Stat. § 49-303 (Reissue 1988) provides as follows:

> When any act of the Legislature provides for a deferred operative date and also contains a repeal section, the action of a subsequent Legislature in postponing or accelerating such operative date whether by reference to the session laws or to the sections of the act as caused to be printed by the Revisor of Statutes shall act as a corresponding postponement or acceleration of the operative date of the repeal section without the necessity of specific reference thereto unless the Legislature specifically and clearly expresses a different intent.

We conclude that this statute was intended to and does prevent such absurd results as urged upon this court by Coopers. Under the terms of L.B. 298, the interest rate for causes of action existing prior to January 1, 1987, was not affected by the bill, and such causes of action are entitled to judgment interest of 14 percent per annum from the date of

rendition of the judgment.

## DISCRETION OF THE TRIAL COURT

Coopers next argues that there is no showing that the trial court abused its discretion. The transcript of the bond hearing and the amount of the bond indicate that the trial court estimated the rate of interest that will accrue on the judgment to be 4.45 percent for 2 years. World Radio does not question the reasonableness of the 2 years. The trial court's estimate that an appeal would be finally determined within 2 years is not unreasonable nor an abuse of discretion. Except for that finding, there is no other discretionary act for the court to perform under § 25-1916(1). The determination of interest is a matter of arithmetic, and in this case, court costs in relation to the judgment are de minimis. As indicated earlier in this opinion, if the judgment draws interest at 14 percent, approximately $3,000,000 more interest would accrue, and the bond is approximately that much lower than it should be. The $21,800,000 requested by World Radio is slightly less than that necessary to cover the interest that will accrue in 2 years. Within 60 days of the date of this order, Coopers shall file with and have approved by the clerk of the district court an additional supersedeas bond, so that the total bond shall be $21,800,000.

MOTION GRANTED.