JOYCE S., APPELLEE, V. FRANK S., APPELLANT.

571 N.W.2d 801

Filed September 23, 1997.   No. A-96-749.

James T. Gleason, of Stalnaker, Becker, Buresh, Gleason & Farnham, P.C., for appellant.

Benjamin M. Belmont, of Lustgarten & Roberts, P.C., for appellee.

MILLER-LERMAN, Chief Judge, and HANNON and IRWIN, Judges.

HANNON, Judge.

In order to protect the parties' privacy, we will avoid using the parties' last name in this opinion. In a proceeding for the modification of a divorce decree in the district court, Frank S. sought supervised visitation of his only child and recalculation of child support. Joyce S., his former spouse, cross-petitioned, praying that Frank's parental rights be terminated on the basis that Frank had been convicted of sexually abusing the child. The trial court terminated his parental rights under Neb. Rev. Stat. § 42-364(7) (Cum. Supp. 1994), thereby rendering the other issues moot. Frank appeals. He argues that the trial court erred in terminating his parental rights because Joyce did not prove the elements necessary for termination of parental rights under § 42-364(7) and that the material circumstances have not changed since the dissolution decree was entered. He contends that the district court erred, depriving him of his constitutional rights, by taking judicial notice of certain court records and by admitting hearsay evidence included in the guardian ad litem's report as well as the guardian's opinion. We conclude that while the trial court erroneously admitted into evidence a great deal of hearsay, upon a de novo trial by this court, not considering the improperly noticed court records, the inadmissible hearsay evidence, or the guardian's opinion, we conclude that a material change of circumstances exists and that the remaining admissible evidence clearly and convincingly justified the termination of Frank's parental rights under § 42-364(7). Accordingly, we affirm.

## PRELIMINARY CONSIDERATION

We can find no cases where a district court has terminated parental rights under § 42-364(7). Apparently, before the present version of § 42-364(7) was adopted, the district court did not have the authority to terminate parental rights in a dissolution action. See, *Linn v. Linn*, 205 Neb. 218, 286 N.W.2d 765 (1980); *Sosso v. Sosso*, 196 Neb. 242, 242 N.W.2d 621 (1976); *Perkins v. Perkins*, 194 Neb. 201, 231 N.W.2d 133 (1975). Because this is a case of first impression under § 42-364(7), we find it necessary to dispose of certain preliminary questions that seem to be a necessary background to a proper consideration of the errors assigned. These questions are as follows: (1) Were the

statutory requirements enabling the district court to acquire jurisdiction to terminate parental rights under § 42-364(7) followed? (2) What is the applicable standard of review for this court to follow in this appeal? (3) Do the rules of evidence apply in termination proceedings maintained in district court? (4) What burden of proof must a party seeking to terminate parental rights under § 42-364(7) carry? In addition, before reviewing the case de novo, it also seems advisable to determine whether the considerable hearsay in the bill of exceptions may be considered in reviewing the trial court's decision. Thus, two other preliminary questions arise. They are as follows: (5) May the court take judicial notice of Frank's criminal case? (6) Does the guardian ad litem's report constitute inadmissible hearsay, and is his opinion inadmissible as being based thereon?

*Jurisdiction Under § 42-364(7).*

■ This termination proceeding is maintained under § 42-364(7), which provides in significant part:

> Whenever termination of parental rights is placed in issue by the pleadings or evidence, the [district] court shall transfer jurisdiction to a juvenile court established pursuant to the Nebraska Juvenile Code unless a showing is made that the district court is a more appropriate forum. In making such determination, the court may consider such factors as cost to the parties, undue delay, congestion of dockets, and relative resources available for investigative and supervisory assistance.

■ Our concern arises because neither the transcript nor the bill of exceptions contains a clear finding by the district court as required by statute in order for the district court to retain jurisdiction of the termination proceedings. The only indication that the trial court might have made the necessary findings is contained in a journal of the court's final decision. The journal states: "The parties have stipulated, and the Court has previously determined, that this action should proceed in District Court rather than in Juvenile Court, an optional forum under the statute." The parties cannot confer subject matter jurisdiction upon the court by consent or acquiescence. *In re Adoption of Kassandra B. & Nicholas B.*, 248 Neb. 912, 540 N.W.2d 554 (1995). However, the evidence would support a finding by the

trial court that the factors prescribed by § 42-364(7) exist and that the district court was the more appropriate forum. Therefore, we conclude that the trial court's determination that "this action should proceed in District Court rather than in Juvenile Court" is tantamount to a finding that the district court is the more appropriate forum and that therefore, the district court had jurisdiction.

*Standard of Review.*

██ Juvenile court cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings; however, where evidence is in conflict, an appellate court will consider and may give weight to the fact that the trial court observed the witnesses and accepted one version of facts over another. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997).

██ This appeal is not from the juvenile court but from a dissolution action in district court. The Supreme Court has frequently stated the standard of review for child custody determinations to be the following:

> An appellate court reviews child custody determinations de novo on the record. Such determinations are initially entrusted to the discretion of the trial judge and will be affirmed unless they constitute an abuse of discretion. Where credible evidence is in conflict on a material issue of fact, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

*Smith-Helstrom v. Yonker*, 249 Neb. 449, 458, 544 N.W.2d 93, 100 (1996).

There may be a slight academic difference between the two standards of review, but since we agree with the material findings of fact made by the trial court, any difference in the standard of review could have no bearing on the outcome of this appeal.

We shall review the evidence de novo, and as required, we shall reach a conclusion independent of the lower court's ruling on questions of law. *Ackles v. Luttrell*, 252 Neb. 273, 561 N.W.2d 573 (1997). As will be clear later, the evidence does not

pose the question of which version of the facts should be accepted over another, but, rather, whether the facts in evidence clearly and convincingly support the inferences necessary to establish the facts justifying termination of Frank's rights under § 42-364(7).

*Rules of Evidence.*

■ This question arises because many of the parties' arguments in their briefs are premised upon the notion that the rules of evidence do not apply to termination proceedings and that, therefore, the admission of hearsay is error only if it violates due process. The Nebraska Evidence Rules do not apply in termination actions under the Nebraska Juvenile Code. *In re Interest of P.D.*, 231 Neb. 608, 437 N.W.2d 156 (1989); *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987). But of course, a proceeding to terminate parental rights must employ fundamentally fair procedures satisfying the requirements of due process as required by such cases. See, *In re Interest of L.J., M.J., and K.J.*, 238 Neb. 712, 472 N.W.2d 205 (1991); *In re Interest of J.K.B. and C.R.B.*, 226 Neb. 701, 414 N.W.2d 266 (1987).

The Nebraska Supreme Court has held that the Nebraska rules of evidence do not apply in termination proceedings, on the statutory basis that "the Nebraska Juvenile Code contains explicit standards pertaining to the adduction of evidence at adjudication and dispositional hearings. . . . The Nebraska Juvenile Code also provides: 'Strict rules of evidence shall not be applied at any dispositional hearing.' Neb. Rev. Stat. § 43-283 (Reissue 1984)." *In re Interest of J.S., A.C., and C.S.*, 227 Neb. at 262, 417 N.W.2d at 155. Neb. Rev. Stat. § 43-283 (Reissue 1993) has not been changed, and by its terms it applies only to juvenile courts.

■ There is no similar statutory basis for holding that the Nebraska rules of evidence do not apply to termination proceedings in district court under § 42-364(7). Neb. Rev. Stat. § 27-1101 (Reissue 1995) provides the Nebraska rules of evidence apply to all actions in district court except those in which a judge may act summarily. Therefore, we consider the evidentiary questions presented under the Nebraska rules of evidence

notwithstanding the fact that many of the parties' arguments are based on the assumption the rules do not apply.

*Burden of Proof.*

Section 42-364(7) does not specify the burden of proof. The Supreme Court first applied the clear and convincing evidence standard to termination cases in *State v. Souza-Spittler*, 204 Neb. 503, 283 N.W.2d 48 (1979), by reference to the case *State v. Metteer*, 203 Neb. 515, 279 N.W.2d 374 (1979). In these cases, the court made it clear that it was applying the clear and convincing standard to termination cases because the rights of a parent to his or her child are fundamental rights guaranteed under the U.S. Constitution. There are numerous cases holding that an order terminating parental rights must be based on clear and convincing evidence. E.g., *In re Interest of C.P.*, 235 Neb. 276, 455 N.W.2d 138 (1990). It seems clear that in cases of termination of parental rights under § 42-364(7), the standard of proof must be by clear and convincing evidence. Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997).

*Judicial Notice of Prior Criminal Trial.*

At Joyce's request, the court took judicial notice of the bill of exceptions and court file of Frank's criminal case, wherein he was convicted of first degree sexual assault of the parties' child, Katie. Frank's counsel asked the court to take judicial notice of the court file insofar as it contains a finding that Frank was found not to be a mentally disordered sex offender.

The law is clear that where cases are interwoven and interdependent, and the controversy has already been considered and determined in a prior proceeding involving one of the parties now before the court, the court has a right to examine its own records and take judicial notice of its own proceedings and judgment in the prior action. *State ex rel. Pederson v. Howell*, 239 Neb. 51, 474 N.W.2d 22 (1991). There is some doubt whether the actions are truly interrelated or interwoven, but because Frank's counsel requested that the court take judicial notice of part of Frank's criminal case file and does not argue the two cases are not interrelated, we shall assume they are.

The court took judicial notice of the entire bill of exceptions in Frank's criminal case, and the bill of exceptions contains testimony which would establish Frank molested Katie on many occasions. (The guardian ad litem's report contains a photocopy of the same testimony from that trial.) This is the only evidence supporting the conclusion that Frank sexually molested Katie on more than one occasion.

The Supreme Court has said: "An entire trial record cannot be said to fall within the definition of a judicially noted fact as set out in Neb. Rev. Stat. § 27-201(2) (Reissue 1985)." *State v. Ryan*, 233 Neb. 74, 130, 444 N.W.2d 610, 645-46 (1989). Perhaps the best expression of the correct rule in this regard is contained in 31A C.J.S. *Evidence* § 57 at 159-60 (1996) as follows: "A judge cannot consider testimony taken at a previous trial in a subsequent trial unless such testimony is admitted into evidence. Moreover, a court may not judicially notice testimony taken at a prior hearing in the same case with respect to temporary orders."

We call attention to the fact that Neb. Rev. Stat. § 27-804(2)(a) (Reissue 1995) provides for the admission of the testimony of a witness given at a prior proceeding if the terms of that statute are met. Obviously, that statute would be unnecessary if the court could simply judicially notice such evidence.

In *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 835-36, 458 N.W.2d 443, 456 (1990), the Nebraska Supreme Court quoted the following with approval: " '[A]s a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it.' " In *Gottsch*, the Supreme Court held that the trial court could judicially notice the fact of a judgment in another case. However, the *Gottsch* court held that the trial court could not judicially notice the existence of the defendants' allegedly fraudulent behavior in the other case unless the fraud was a previously adjudicated fact binding on one of the parties in the case before it.

Therefore, this court takes judicial notice of the judgment of the court in Frank's criminal case, that is, that Frank was convicted and sentenced for sexually penetrating Katie, on

or about November 1, 1990, through June 30, 1991; that the conviction was affirmed on appeal; and that Frank was found not to be a mentally disordered sex offender. We note, however, that there are certified records in evidence which would prove the same facts and that Neb. Rev. Stat. § 27-803(20) (Reissue 1995) provides: "Evidence of a final judgment entered after a trial . . . adjudging a person guilty of a crime [is admissible] to prove any fact essential to sustain the judgment . . . ." The bill of exceptions was clearly not a proper subject for judicial notice.

*Hearsay in Guardian's Report and Opinion.*

The Supreme Court has recently warned that a testifying expert may not be made a conduit for hearsay. *Koehler v. Farmers Alliance Mut. Ins. Co.*, 252 Neb. 712, 566 N.W.2d 750 (1997). In the instant case, the guardian ad litem testified, and over objection his report was admitted into evidence. Attached to that report were answers to interrogatories by Joyce and Frank; the testimony of Katie and another witness in Frank's criminal case; a psychiatric evaluation of Katie; a police report; a psychological assessment of Frank; the report, dated December 18, 1991, of a clinical psychiatric interview of Frank; a report, dated February 19, 1992, on Frank's mentally disordered sex offender evaluation; and a letter containing an evaluation of Frank's parents' relationship with Katie, dated December 17, 1992. All of these documents are clearly hearsay under the Nebraska rules of evidence and are inadmissible under the Nebraska rules of evidence unless they come within a recognized exception to Neb. Rev. Stat. § 27-801 (Reissue 1995).

At trial, Frank's attorney objected to the admission of these documents into evidence, and on appeal he clearly assigns and argues that their admission and the admission of the guardian's opinion were error. In her brief, Joyce does not clearly address the admissibility of these documents but seems to assume they are admissible as part of the guardian's report because the guardian testified. She also implies they are admissible because the guardian is an expert.

Joyce's attorney argues that the practice in Nebraska has been to allow a guardian ad litem to conduct an independent investigation, to prepare reports, and to testify when called to do

so. As authority for this procedure, Joyce's attorney cites § 42-364(7) (directing trial court to appoint guardian ad litem); Neb. Rev. Stat. § 42-358(1) (Cum. Supp. 1994) (empowering guardian ad litem to make independent investigation); *Beran v. Beran*, 234 Neb. 296, 450 N.W.2d 688 (1990) (holding that guardian ad litem may testify and that court need not give guardian's testimony more or less credence than that of any other witness); *Orr v. Knowles*, 215 Neb. 49, 337 N.W.2d 699 (1983) (holding duties and responsibilities of guardian ad litem are not coextensive with those of attorney); and *Jorgensen v. Jorgensen*, 194 Neb. 271, 231 N.W.2d 360 (1975) (holding that before guardian's report may form basis for judgment, judge must submit it to counsel and hold hearing on it). We do not believe these authorities support the admission of the guardian's report or his opinion.

The trial judge has the discretion to admit the hearsay that an expert relies upon in evidence to support the expert's opinion, but the fact that an expert relied on records in forming his or her opinion does not transform the records from inadmissible hearsay to admissible evidence. *Koehler, supra; Vacanti v. Master Electronics Corp.*, 245 Neb. 586, 514 N.W.2d 319 (1994). Even under that rule, we would not hesitate to hold that the trial court abused its discretion in allowing such patent hearsay into evidence.

Furthermore, a guardian ad litem may be a legal expert, but a person appointed a guardian ad litem is not necessarily an expert on child welfare. Neb. Rev. Stat. § 27-702 (Reissue 1995), the statute allowing expert testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Bearing in mind that guardians ad litem and judges are invariably lawyers and that most, if not all, trial judges are at least as experienced in the area of child welfare as practicing lawyers, it is doubtful that an opinion of a guardian ad litem, as an expert, would truly assist the judge in understanding the evidence or in determining any issues of fact in litigation involving the welfare of children.

▉ We suggest that the proper function of a guardian ad litem is to thoroughly investigate the facts to learn where the welfare of his or her ward lies, and then, if the issues necessary for the protection of that ward are not properly framed by appropriate pleadings previously filed by the child's parents, the guardian ad litem should file a report or pleading that will bring to the court's attention those issues. Furthermore, if an investigation by the guardian leads the guardian to conclude that the attorneys for the parties are not going to introduce the relevant and admissible evidence necessary to protect the interests of the ward, the guardian ad litem should do so and then by argument suggest to the court what the law and the evidence dictate would be in the best interests of the ward. We think that under the adversarial system, the duty of the guardian ad litem is to be sure the judge has the full facts and the correct law, accompanied by helpful argument, so that the judge may make a correct decision. In short, the primary function of the guardian ad litem is to give the judge the necessary information by way of admissible evidence so the judge may issue an order which is in the best interests of the ward and which will be upheld on appeal. Of course, if the court does not issue such an order, the guardian ad litem should appeal.

▉ We suggest that the primary function of the guardian ad litem's report is for the guardian to demonstrate to the judge that the guardian has performed his or her duty. Frequently, when a guardian ad litem's report does not contain objectionable hearsay, it is an efficient means of communicating the facts that the guardian has learned to the parties and to the judge, if properly admitted into evidence, but a report is not somehow made admissible because it was prepared by a guardian ad litem appointed by a court pursuant to a statute. Hearsay within such reports remains hearsay. The guardian's report and the documents attached to it will not be considered in our de novo review.

In this case, the guardian ad litem was allowed to opine that it was in Katie's best interests that Frank's parental rights be terminated. The record clearly shows that opinion is based upon hearsay that would not be admissible in court. We see no merit in giving credence to the opinion of a guardian when that opin-

ion is based in large measure on the very hearsay that our legal tradition holds to be improper. Therefore, in our de novo review we shall consider only that portion of the guardian's testimony and evidence that is relevant and admissible.

## BACKGROUND, PLEADINGS, AND COURT'S DECISION

Frank and Joyce married on December 13, 1969, and they had one child, Katie, born May 27, 1985. On December 12, 1991, a jury found Frank guilty of first degree sexual assault of Katie, and on March 20, 1992, Frank was found not to be a mentally disordered sex offender and was sentenced to 4 to 6 years in prison. This court affirmed Frank's conviction in *State v. [Frank S.]*, 2 NCA 777 (1993).

On July 2, 1991, Joyce filed a petition for dissolution, seeking custody of Katie. On December 1, 1992, the trial court dissolved the parties' marriage. In the decree, Joyce was awarded custody of Katie, and "[p]ending further Order of the Court," the court did not provide visitation for Frank. At the time, he was incarcerated at the Nebraska Penal and Correctional Complex.

In January 1995, Frank was released from prison. On March 13, 1995, he filed an amended petition requesting reasonable visitation with Katie, recalculation and reestablishment of child support, and other relief concerning the parties' property that is immaterial to this appeal.

Joyce filed a responsive pleading, which contained a cross-petition in which she alleged:

[Frank] is unfit by his previous lewd and lascivious behavior and the criminal acts perpetrated upon the minor child which were seriously detrimental to the health, morals and well-being of the minor child. It is not in the best interests of the minor child to re-establish any type of relationship between [Frank] and the minor child and [Frank's] parental rights as they pertain to the minor child should be terminated.

Joyce prayed for the termination of Frank's parental rights and other relief concerning property. In answer to this pleading, Frank denied the allegations and alleged it was in Katie's best interests to develop a relationship with him.

The trial was held on February 29, 1996. The pleading posture of this case caused Frank to present his case first. He called Dr. Thomas J. Gilligan, an experienced clinical psychologist, to testify as an expert, and he testified himself. In her case, Joyce called Robert G. Decker, the guardian ad litem, and Dr. Cynthia Topf, a clinical psychologist. Joyce also testified. Frank testified in rebuttal. Pursuant to the parties' request, the trial court took judicial notice as stated above.

The trial court made detailed and specific findings of fact and then made the specific findings that it was in Katie's best interests that Frank's parental rights be terminated and also that Frank "committed repeated acts of a lewd and lascivious type, involving the parties' minor child. This conduct is seriously detrimental to the health or well-being of the minor child." The court ordered Frank's parental rights terminated.

## SUMMARY OF EVIDENCE

Upon the basis of the discussion in the standard of review section, we conclude that in reviewing a termination case held in the district court, this court reviews the record de novo to determine whether the district court abused its discretion.

Gilligan, a psychologist, testified at Frank's request. He had been apprised of the background but had not treated or interviewed Katie, Frank, or Joyce. He opined that it was not in Katie's best interests to be forced to see her father if she expresses a desire not to, that a biological child and his or her father will always have a relationship with each other, and that it would be impossible to know Katie's best interests without examining and studying her.

Based on experience, he opined that the relationship between sexually abused children and their abusers can be reestablished with treatment. He opined that it was in Katie's best interests to start the process with a lot of background work. He also estimated that therapy would be long and expensive, and that success would not be ensured. He also testified that 58 percent of sex offenders are rearrested for the same offense and that one well-established school of thought holds that sex offenders are not treatable unless they are able to admit what they have done.

Frank testified that at the time of trial, he lived in Omaha with his brother and parents. He holds a bachelor of science

degree in business administration, but the only employment he can find is working in a sandwich shop earning a gross monthly wage of $1,408.33. He again denied sexually abusing his daughter. He testified that he does not believe that his daughter lied, but, rather, that she was manipulated by Joyce. He admits he has not sought any type of treatment for any sexual disorder.

Decker, the licensed lawyer appointed guardian ad litem, testified. Much of his testimony has been rejected in other sections of this opinion. He testified to the extent of his investigation to determine where Katie's best interests lie. He had talked to Katie and found her to be "an effervescent young lady," who was "full of vim and vigor." He learned that she was doing excellently in school. When he saw her on the day of trial, she appeared to have been crying.

Topf, a clinical psychologist practicing in Omaha, testified for Joyce. Topf specializes in the area of sexual abuse and works with children in that field. She had not examined Frank, Joyce, or Katie. She testified hypothetically that Katie would not benefit from contact with Frank unless Katie expressed a desire to see him and that before any meeting it would be necessary for a therapist to determine whether Katie was ready for such a meeting. She testified that an abused child often fears being remolested if the abusing parent has been out of his or her life for a while and suddenly reappears and that Katie could not reestablish a relationship with a father who maintains his denial. She too testified to the considerable therapy necessary before a relationship between Frank and Katie could be reestablished.

Topf opined there is no reason to reestablish the relationship between Katie and Frank, because Katie had expressed that she does not want to see her father and because Frank has not gone through treatment and remains in denial. Topf testified that based upon these same facts, it "might" be in Katie's best interests to terminate Frank's parental rights.

Joyce was 51 at the time of trial, single, in good health, and a certified public accountant. Her 1994 income was $75,450. She testified that after the assault, Katie had trouble sleeping, had problems playing and interacting with her friends, and had nightmares until 6 months after the criminal case was over. Joyce testified that Katie received counseling from approxi-

mately June 1991 until January 1993 and that Joyce intends to start Katie in counseling again when she reaches adolescence.

Joyce testified that she never initiates any conversation with Katie about Frank and that Katie never initiates any such conversation with her. She also testified that Katie has not expressed any desire to see Frank or his extended family and that Katie has told her that she does not want to see Frank. Joyce testified that she had observed that Katie was very apprehensive when Katie had to talk to the guardian ad litem.

Joyce testified that her mother had recently died and that her only living relatives, aside from Katie, are an aged aunt and uncle and that she wants Frank's parental rights terminated so he will have no claim on Katie if Joyce should die.

## ASSIGNMENTS OF ERROR

Frank alleges the court erred (1) by terminating his parental rights, (2) by not establishing visitation rights for him, (3) by admitting the testimony of the guardian ad litem and exhibits produced by him, and (4) by taking judicial notice of records and testimony not properly subject to judicial notice.

## ANALYSIS

*Frank's Conduct as Grounds for Termination Under § 42-364(7).*

The gist of Frank's argument in this area is that the trial court found that Frank committed "repeated acts of a lewd and lascivious type, involving the parties' minor child," but absent the hearsay evidence in the guardian's report and the evidence in the judicially noticed bill of exceptions, there is no proof that he committed repeated acts of a lewd and lascivious type, but only that he sexually penetrated Katie on one occasion. We agree that the admissible evidence from Frank's criminal case establishes only that Frank committed one lewd and lascivious act because it shows only that he sexually penetrated Katie on one occasion, and § 42-364(7) provides in part that parental rights may be terminated if one or both parents are unfit by reason of "repeated lewd and lascivious behavior." Frank argues that without evidence of repeated acts, the requirement of the statute is not met.

This argument is not controlling, in part because in the original dissolution decree the trial court found Frank was incarcerated " 'based upon a guilt finding involving sexual crimes com-

mitted against the minor child.' " In view of the fact that Joyce's burden is to prove each of the elements justifying termination by clear and convincing evidence, there is insufficient evidence to prove that Frank committed repeated lewd and lascivious acts.

However, Joyce also pled that Frank perpetrated criminal acts upon Katie, and one of these criminal acts clearly supports a finding of a statutory basis to terminate his parental rights under alternate grounds. Section 42-364(7) also allows termination of parental rights if a parent is unfit by reason of debauchery, and there is no requirement that there be repeated acts of debauchery. Debauchery has been defined as "**1.** excessive indulgence in sensual pleasures; intemperance. **2.** *Archaic.* seduction from duty, allegiance, or virtue." Webster's Encyclopedic Unabridged Dictionary 372 (1989). Debauchery is " '[v]icious indulgence in sensual pleasures' " or " '[e]xcessive indulgence in sensual pleasures of any kind; gluttony; intemperance; sexual immorality; unlawful indulgence of lust.' " *Cleveland v. United States*, 329 U.S. 14, 17 n.4, 67 S. Ct. 13, 91 L. Ed. 12 (1946). The criminal act which Frank was found guilty of having committed on Katie certainly comes within the definition of debauchery, although most members of our society regard the incestuous rape of a 5-year-old child as a particularly repulsive sort of debauchery. There is clear and convincing evidence on this record providing that Frank is unfit by reason of debauchery.

Whether Frank's conduct is found to constitute repeated acts of lewd and lascivious conduct or debauchery, before Frank's parental rights may be terminated on either ground, the evidence must show that the ground relied upon was "seriously detrimental to the health, morals, or well-being of the minor child." § 42-364(7). It is probably self-evident that Frank's conduct satisfies that particular statutory provision.

Furthermore, Joyce testified that Katie had last seen her father in district court on December 9, 1991; that Katie had nightmares until 6 months after the criminal trial; and that Katie underwent psychological counseling from approximately June 1991 to January 1993 and will resume such counseling when she reaches adolescence.

Cases considering the detrimental effects of sexual abuse of a child by a parent arise under the Nebraska Juvenile Code, either when the State seeks to have a child declared to be a child as defined under Neb. Rev. Stat. § 43-247(3) (Reissue 1993) or when the State seeks termination under Neb. Rev. Stat. § 43-292 (Reissue 1993). The specific statutory requirements of these statutes vary from the provision under consideration, but all attempt to set a standard by which a court may determine whether the parent's conduct is such that further or unsupervised association of the parent with the child is likely to be detrimental to the child. In cases involving sexual abuse of a child by a parent, such abuse has been universally condemned and held to be sufficiently detrimental, justifying either intervention by the State under § 43-247 or termination under § 43-292. See, *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997) (upholding termination of mother's parental rights because she continued to associate with man who was convicted of first degree sexual assault of one of her children); *In re Interest of M.B. and A.B.*, 239 Neb. 1028, 480 N.W.2d 160 (1992) (upholding adjudication of M.B. and A.B. because father had not received treatment for sexual disorder and had twice been convicted of committing sex crimes against his children); *In re Interest of B.B. et al.*, 239 Neb. 952, 479 N.W.2d 787 (1992) (upholding termination of mother's parental rights because she continued to associate with two men whom she had previously accused of sexually abusing her children); *In re Interest of W.C.O.*, 220 Neb. 417, 370 N.W.2d 151 (1985) (upholding finding that W.C.O. was child within meaning of § 43-247(3), since W.C.O.'s father had committed sexually abusive act upon another child; court stated danger of permitting father to be alone with his minor child should be obvious); *In re Interest of Goodon*, 208 Neb. 256, 303 N.W.2d 278 (1981) (upholding termination of parents' rights to their children where father had sexually molested some of his female children).

We conclude that clear and convincing evidence shows that Frank's debauchery was seriously detrimental to Katie's health, morals, and well-being.

*Is Termination in Katie's Best Interests?*

Neither criminal conduct nor imprisonment alone necessarily justifies permanently depriving a parent of his or her rights to a child. *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992). However, the parent's inability to perform his or her obligation by reason of imprisonment or the nature of the crime is relevant to the issue of the parent's fitness. See, also, *In re Interest of Reed*, 212 Neb. 208, 322 N.W.2d 411 (1982). We review the evidence on the issue of Katie's best interests with these rules in mind.

Topf testified that Katie's relationship with Frank cannot be established as long as he denies the abuse and that in such a situation, the child remains unsafe. She testified that there was no reason to reestablish a relationship between Katie and Frank, since Katie had stated that she does not want to see him and since Frank continues to deny the abuse. Topf testified that it "might" be in Katie's best interests to terminate Frank's rights for Katie's safety and well-being and because victims of child abuse often fear that the abuse will recur if the abuser reappears.

Gilligan testified that it was not in Katie's best interests to see her father if she did not want to, although he testified that he needed more information before he could decide whether termination of Frank's rights was in Katie's best interests. He testified that he had previously recommended terminating a parent's rights where the parent had not undergone treatment for sexual abuse. He stated that it is well established that sex offenders are not generally treatable unless they admit what they have done and that it generally is recognized that sexually abusive parents must take full responsibility for their actions in front of their children. He testified that Frank's denial put Katie at risk of being sexually molested again.

At the time of trial, Katie was doing very well, making good grades in school, and engaging in various social activities. She never initiates any conversations about Frank and has expressed that she does not want to see him. Frank had had no contact with Katie for 5 years because of his arrest and conviction for sexually assaulting Katie. Frank continues to deny the abuse, and both Topf and Gilligan testified that Frank poses a risk of harm to Katie because of this denial.

Most 30-year-old parents are not very concerned that they will not live to see their children into adulthood, but provident 50-year-old single parents have legitimate concerns about not being around to help their children into adulthood. Most family situations are such that life insurance and a will providing for a responsible guardian are about all that is necessary or advisable. However, in Joyce's case, if she dies, Frank, as Katie's only surviving parent, would be entitled to her custody and control. See, Neb. Rev. Stat. § 30-2608 (Reissue 1995); *Uhing v. Uhing*, 241 Neb. 368, 488 N.W.2d 366 (1992). Even Frank's expert opined that Frank and Katie should have contact only if prolonged counseling proved effective, yet as things now stand, upon Joyce's death, Frank would have the sole right to her custody. Of course public officials and concerned friends could bring an action under the Nebraska Juvenile Code to protect Katie, but Joyce does not have close relatives with the vigor to push such litigation, and a hesitancy to rely upon some unknown public official is understandable.

On the other hand, how can Katie benefit from the continued existence of Frank's parental rights? Because his crime causes almost everyone to agree he cannot be trusted to have unsupervised visitation, she can hardly benefit from the usual father-daughter association. It is certainly unrealistic to think that after his crime he can give her the comfort and support a father usually gives a daughter in our society, and he certainly cannot be considered a role model for her to use in judging the men she will encounter later in life. Katie's mother has the income to support her, and Frank could supply only limited support at best. Topf opined there is no reason to reestablish a relationship between Katie and Frank. We agree. Therefore, we conclude that clear and convincing evidence shows that it is in Katie's best interests that Frank's parental rights be terminated.

*Material Change of Circumstances.*

The record shows that Frank was convicted of the first degree sexual assault of Katie during the period from November 1990 to June 1991. The decree of dissolution was entered on December 1, 1992. Frank was not awarded visitation rights, nor were his parental rights terminated. Therefore, Frank argues that Joyce's "right to seek a termination of his parental rights based

on activity which had to have occurred prior to the Decree of Dissolution is precluded under the doctrine of res judicata." Brief for appellant at 13. Joyce argues that the termination of Frank's parental rights is not barred by res judicata because circumstances have changed since the entry of the decree.

■ The doctrine of res judicata bars the relitigation of a matter that has been directly addressed or necessarily included in a former adjudication. *Moulton v. Board of Zoning Appeals*, 251 Neb. 95, 555 N.W.2d 39 (1996).

■ In *Moulton*, the Supreme Court noted that an exception to this rule exists when there has been an intervening change in facts or circumstances. A party seeking to modify a child support order must show that a material change in circumstances has occurred since the entry of the original decree which was not contemplated when the decree was entered. *Knaub v. Knaub*, 245 Neb. 172, 512 N.W.2d 124 (1994); *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994). The principles of these cases apply to all domestic relations litigation. If, in a domestic relations case, circumstances have changed, a former decree may be modified in light of those circumstances.

At the time of the decree, Frank was incarcerated and was not seeking any visitation with Katie; Joyce's mother was still living. Neither criminal conduct nor imprisonment alone necessarily justifies permanently depriving a parent of his or her child. *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992). Furthermore, the expert testimony in evidence would lead to the conclusion that if Frank had admitted to the crime and sought counseling, or perhaps if he had merely sought counseling, his relationship with Katie might have been reestablished. Undoubtedly, had Joyce sought termination at the time of the decree, she would have been met with the claim that Frank intended to do whatever was necessary to reestablish a relationship with Katie, and a court would quite likely have concluded he would have to be given the chance. Katie's present attitude in regard to her father could not have been predicted. Therefore, while many of the material circumstances have not changed, others have changed sufficiently to allow the court to modify the decree. The decision of the trial court is affirmed.

AFFIRMED.