SHARON L. WORM, APPELLANT,
v. VERNON A. WORM, JR., APPELLEE.
573 N.W.2d 148

Filed December 9, 1997.   No. A-97-075.

242

Thomas Blount, of Bertolini, Schroeder & Blount, for appellant.

No appearance for appellee.

MILLER-LERMAN, Chief Judge, and SIEVERS and MUES, Judges.

MILLER-LERMAN, Chief Judge.

Sharon L. Worm appeals from the December 18, 1996, order of the district court for Sarpy County denying her petition to modify the decree of dissolution of May 1, 1995, dissolving her marriage to Vernon A. Worm, Jr. In her petition to modify, Sharon sought to terminate the parental rights of Vernon to their only child, Elizabeth, born February 1, 1987. The trial court declined to terminate Vernon's parental rights under Neb. Rev. Stat. § 42-364(7) (Cum. Supp. 1994). Sharon appeals, claiming that clear and convincing evidence shows that Vernon had abandoned Elizabeth and that termination of Vernon's rights is in Elizabeth's best interests. For the reasons recited below, we affirm.

## BACKGROUND

On February 14, 1996, Sharon filed a petition to modify the decree of dissolution entered May 1, 1995, dissolving her mar-

riage to Vernon. The record shows that the decree awarded Sharon custody of Elizabeth and that the decree ordered Vernon to pay $460 per month in child support. The decree also allowed Vernon the following visitation with Elizabeth: every other weekend, every other Wednesday evening, alternating major holidays, visits on special occasions, and 3 to 5 weeks of summer visitation. The decree contains other provisions not relevant here.

In her petition to modify the decree, Sharon alleged that Vernon owed more than $4,000 in back child support, that he had left the state without leaving an address or phone number, and that he had failed to exercise his visitation rights since July 1995.

In an affidavit also filed on February 14, 1996, Sharon detailed Vernon's last visitation with Elizabeth. Sharon stated that the visit occurred from July 6 through July 29, 1995. Sharon stated further that Elizabeth told her that during the visit, Vernon took Elizabeth to the horseraces with his girl friend and her children and that Vernon's girl friend's 15-year-old daughter drove them home, because Vernon and his girl friend were too intoxicated to drive. Sharon attested also that Elizabeth said that Vernon and his girl friend smoked continuously around Elizabeth, even though Elizabeth is asthmatic, and that Vernon refused to give Elizabeth her allergy medication. Finally, Sharon stated in the affidavit that Elizabeth told her that Vernon did not prepare meals, that there was only beer in the refrigerator, and that Elizabeth was required to sleep with Vernon's girl friend's 13-year-old son, either on the floor or in a bed.

In her petition to modify the decree, Sharon alleged that Vernon's conduct constituted abandonment and that such abandonment was a material change in circumstances, warranting the modification of the decree. Sharon asked the court to terminate Vernon's parental rights to Elizabeth or, alternatively, to modify the decree, restricting Vernon's visitation.

The record shows that Sharon attempted to personally serve Vernon with a copy of the modification petition at his last known address and at his last known place of employment and that Vernon could not be found. On March 20, 1996, Sharon

filed a motion for leave to serve Vernon by publication, which was granted on March 29. An affidavit included in the record shows that the notice of the petition to modify the divorce decree was published in The Papillion Times on April 4, 11, 18, and 25. In accordance with Neb. Rev. Stat. § 25-520.01 (Reissue 1995), copies of the notice were sent to Vernon's last known address and his last known place of employment. Copies were also sent to Vernon's mother, two of his brothers, and a sister.

In a motion filed June 18, 1996, pursuant to § 42-364(7), Sharon asked the court to transfer the modification proceedings to the juvenile court for Sarpy County or, alternatively, to determine that the district court was the more appropriate forum. After hearing, the court found that the district court was the more appropriate forum and appointed a guardian ad litem to protect Elizabeth's interests.

On December 3, 1996, a hearing was held on Sharon's petition to modify the decree. Sharon, her attorney, and the guardian ad litem were present. Vernon did not appear, nor was he represented by counsel. Sharon testified. Sharon stated that Vernon ceased paying child support in November 1995 and offered exhibit 1, a copy of a printout of Vernon's child support payment history, which appears to be a copy of a court record. Sharon testified that Vernon is an alcoholic and that he is drunk most of the time.

Sharon testified further that Vernon last exercised his visitation rights in July 1995 and that Elizabeth had told her that during this visit, Vernon's girl friend's 13-year-old son was in charge of watching Elizabeth. Sharon testified also that Elizabeth said that there was nothing to eat at Vernon's house, that the only thing in Vernon's refrigerator was beer, and that Elizabeth was required to sleep in the same bed as Vernon's girl friend's 13-year-old son.

In her testimony, Sharon acknowledged that Vernon had left four or five messages on her answering machine in the last year. In the first message, left on December 1, 1995, Vernon stated that he was leaving town and told Elizabeth "to take care of herself." Sharon testified that in another message, Vernon asked them to call him, although he did not leave a phone number. Sharon testified that she does not have Vernon's phone number,

nor does she know to where he has moved. Sharon testified that Vernon last left a message in June 1996, after the petition to modify had been filed. Sharon stated that she recently changed her phone number because she was getting a lot of late night phone calls and a lot of hangups. Sharon stated that other than these phone calls, Vernon had not made any attempt to contact Elizabeth and had not sent Elizabeth any cards or gifts.

Sharon testified that in her opinion it is in Elizabeth's best interests to terminate Vernon's parental rights. She testified that she feared that Vernon would take Elizabeth away from her if he returned and that she feared that Elizabeth would be in danger and unable to take care of herself if Vernon did so.

In argument to the court, the guardian ad litem indicated that she was unsure as to whether termination of Vernon's parental rights was warranted, although she did state that Elizabeth's relationship with her mother provides Elizabeth with the stability she needs and that Elizabeth is in need of permanency and closure.

The court took the matter under advisement. In an order filed December 18, 1996, the court declined to terminate Vernon's parental rights and denied the petition to modify. The court found that clear and convincing evidence did not exist to support the finding that Vernon had abandoned Elizabeth, nor did the evidence support a finding that termination of Vernon's parental rights would be in Elizabeth's best interests. The court noted that Vernon had had very minimal contact with Elizabeth, that he had not paid child support since November 1995, and that Vernon had not seen Elizabeth since July 1995. The court noted, however, that Vernon had attempted to maintain contact with Elizabeth by calling and leaving messages. The court found that termination would be premature and that it remained to be seen whether Vernon could rehabilitate himself.

Sharon appeals.

## ASSIGNMENTS OF ERROR

On appeal, Sharon contends that the court erred in determining that (1) there was insufficient evidence of abandonment to warrant terminating Vernon's parental rights, (2) there was insufficient evidence to support a finding that termination of

Vernon's parental rights was in Elizabeth's best interests, and (3) termination of Vernon's parental rights was premature.

## STANDARD OF REVIEW

■ In reviewing a termination of parental rights case held in the district court, an appellate court reviews the record de novo to determine whether the district court abused its discretion. *Joyce S. v. Frank S., ante* p. 23, 571 N.W.2d 801 (1997). In cases of termination of parental rights in district court, the standard of proof must be by clear and convincing evidence. *Id.* If, in a domestic relations case, a material change in circumstances has occurred, a former decree may be modified in light of those circumstances. *Id.*

## ANALYSIS

Sharon argues that the evidence at trial clearly and convincingly established that Vernon had abandoned Elizabeth and that it is in Elizabeth's best interests to terminate Vernon's parental rights. She contends that termination of Vernon's parental rights is not premature.

■ This proceeding to modify the decree to terminate Vernon's parental rights falls under § 42-364(7). As required by statute, Sharon initially made a motion pursuant to § 42-364(7), asking the district court to transfer the case to the juvenile court or to determine that the district court was a more appropriate forum. The district court found that the district court was a more appropriate forum pursuant to § 42-364(7), which provides in pertinent part: "Whenever termination of parental rights is placed in issue by the pleadings or evidence, the court shall transfer jurisdiction to a juvenile court established pursuant to the Nebraska Juvenile Code unless a showing is made that the district court is a more appropriate forum."

■ As noted above, Sharon sought to modify the decree and terminate Vernon's parental rights. Termination of parental rights in the context of a dissolution is available under § 42-364(7), which further provides that a "court may terminate the parental rights of one or both parents after notice and hearing when the court finds such action to be in the best interests of the minor child and it appears by the evidence that one or more [conditions of a list of conditions in § 42-364(7)] exist."

In the instant case, Sharon sought to terminate Vernon's rights under § 42-364(7)(a), which allows for termination of a parent's rights if "[t]he minor child has been abandoned by one or both parents." Because § 42-364(7) only recently provided for the termination of a parent's rights in district court in the context of a domestic relations action, no appellate cases could be found in Nebraska appellate jurisprudence in which a parent's rights were terminated for abandonment under § 42-364(7)(a). Thus, we logically look to cases in which a parent's rights have been terminated for abandonment in juvenile court pursuant to the juvenile code, Neb. Rev. Stat. § 43-292(1) (Cum. Supp. 1996). See *Joyce S. v. Frank S., supra.*

Abandonment, for purposes of determining whether termination of parental rights is warranted under § 43-292(1), has been described as a parent's intentionally withholding from a child, without just cause or excuse, the parent's presence, care, love, protection, maintenance, and opportunity for the display of parental affection for the child. *In re Interest of Theodore W.,* 4 Neb. App. 428, 545 N.W.2d 119 (1996). The question of whether a parent has abandoned a child so as to justify termination of parental rights is largely one of intent, to be determined in each case from all of the facts and circumstances. *Id.* Circumstantial evidence of intent may be used to establish abandonment for purposes of termination of parental rights. *Id.* We recognize that by statutory language under § 43-292(1), the abandonment must have existed for at least 6 months, whereas under § 42-364(7)(a), there is no minimum statutory period which must be met prior to a finding of abandonment.

Under the juvenile code, to prove abandonment of a child sufficient to terminate parental rights, the evidence must clearly and convincingly show that a parent for at least 6 months has acted toward a child in a manner evidencing a subtle purpose to be rid of all parental obligations and to forgo all parental rights, together with a complete repudiation of parenthood and abandonment of parental rights and responsibilities; mere inadequacy is not the test. *In re Interest of E.G.,* 240 Neb. 373, 482 N.W.2d 17 (1992). We use the cases under the abandonment provision of the juvenile code for assistance in evaluating the present appeal.

In the instant case, Vernon had not seen Elizabeth for slightly over 6 months when Sharon filed the petition to modify on February 14, 1996. The record reflects that Vernon had not paid child support since November 1995; that he had not seen Elizabeth since July 1995; and that during this last visit, his care of Elizabeth was inadequate. Evidence from the hearing of December 3, 1996, also shows that between December 1995 and June 1996, Vernon had left four or five messages on Sharon's answering machine. At least one of those messages was left after Sharon filed her motion to modify. Based on this record, the trial court denied Sharon's petition to modify the decree to terminate Vernon's parental rights based on abandonment.

As is apparent from the trial court's order of December 18, 1996, that although the trial court found the overall circumstances troubling, the trial court found in effect that the circumstances were not necessarily irreversible and that termination of Vernon's parental rights would be premature. Given the evidence, and following our de novo review, we cannot conclude that the trial court erred in denying the motion to modify at this time. Accordingly, we affirm.

AFFIRMED.

SIEVERS, Judge, concurring.

I concur in the result, but not because I do not believe that Vernon has not abandoned his daughter—he has. His failure to provide love, nurturing, monetary support, and the most basic of contact with Elizabeth is clearly abandonment of the child. But termination of his parental rights is permanent, and although Vernon's lack of responsibility generates little compassion for him, we must also consider whether termination of his parental rights is in Elizabeth's best interests. Sharon offers no compelling reason to terminate Vernon's rights, nor does she show benefit to Elizabeth from such a termination. Sharon's fear of Vernon's taking Elizabeth seems unsubstantiated by any of his past actions. In fact, his abandonment of Elizabeth makes it seem unlikely. Absent evidence showing that termination of Vernon's parental rights is in the best interests of Elizabeth, we should not forever remove the opportunity for a lawful father-daughter relationship. Moreover, we should not free Vernon from his obligation to pay support for his child, which a termination would do.