741 N.W.2d 452 (2007)
16 Neb. App. 142
TIMOTHY T., appellee,
v.
SHIREEN T., appellant.
No. A-07-106.
Court of Appeals of Nebraska.
November 6, 2007.
*454 Kevin V. Schlender, York, for appellant.
Scott D. Grafton, of Svehla, Thomas, Rauert & Grafton, P.C., York, for appellee.
Rachel A. Daugherty, of Lauritsen, Brownell, Brostrom, Stehlik, Myers & Daugherty, P.C., L.L.O., Grand Island, guardian ad litem.
SIEVERS, CARLSON, and CASSEL, Judges.
CARLSON, Judge.

INTRODUCTION
Shireen T. appeals from an order of the district court for Hamilton County terminating her parental rights to Sharisa T. in an action to modify a decree of dissolution. On appeal, Shireen argues the court erred in finding that there was sufficient evidence to establish she intentionally abandoned or neglected Sharisa and that it is in Sharisa's best interests to terminate her parental rights to Sharisa. Shireen also contends that no material change in circumstances exists to justify a modification of the decree of dissolution. For the reasons set forth below, we affirm.

BACKGROUND
Timothy T. and Shireen's marriage was dissolved by a decree of dissolution entered by the district court on September 27, 1999. The court awarded Shireen custody of the parties' three minor childrena son, born October 22, 1986; another son, born December 28, 1989; and Sharisa, born May 2, 1998subject to visitation for Timothy. On December 25, 1999, Shireen was arrested for conspiring to murder Timothy. In February 2000, the court entered a temporary order granting Timothy custody of the children, with visitation rights for Shireen.
In August 2001, the court convicted Shireen of conspiring to murder Timothy, and in September, the court sentenced Shireen to 8 to 15 years in prison. Shireen appealed to the Nebraska Supreme Court, which affirmed Shireen's conviction and sentence. See State v. Tyma, 264 Neb. 712, 651 N.W.2d 582 (2002). The record shows that if Shireen does not lose any good time, her release date is February 8, 2009.
On October 24, 2001, the court modified the decree and granted Timothy legal custody of the children; pursuant to the parties' stipulation, the boys were placed with Shireen's parents and Sharisa was placed with Timothy. The parties also stipulated that Shireen would not have visitation with Sharisa.
On March 6, 2006, Timothy filed a complaint to terminate Shireen's parental rights. Hearings were held on September 12 and 20 and October 11. Lisa Pattison, a clinical psychologist, testified on Timothy's behalf. Pattison testified that in 2004, she observed Sharisa, Timothy, and Pam T., Timothy's wife, together on two occasions. Pattison testified that Sharisa has developed secure attachments to Timothy. Pattison also testified that Sharisa calls Pam "mommy" and is securely attached to Pam. Pattison testified that Sharisa has not had contact with Shireen since May or June 2001 and that this lack of contact has detrimentally impacted Sharisa's relationship with Shireen. Pattison testified that Sharisa has no real memory of Shireen.
Pattison testified that she interviewed Shireen and that Shireen denied the conspiracy *455 charges against her and did not indicate any remorse. Pattison testified that it is in Sharisa's best interests to reside with Pam and Timothy on a permanent basis. Pattison testified that she would be concerned if Shireen had visitation with Sharisa once Shireen is released from prison, because Shireen lacks insight regarding how her conviction and incarceration have negatively impacted Sharisa.
Pattison testified that she was also concerned given Shireen's history of emotional instability and "homicidal, suicidal thoughts." Pattison testified that Shireen had been suicidal on two prior occasions and had previously been diagnosed with major depression and bipolar disorder.
Pattison testified that she was concerned that Shireen would not seek treatment after her release from prison and would have a mental breakdown. Pattison also testified that Shireen has a past history of turning the children against Timothy.
Timothy testified that he married Pam on November 28, 2003. Timothy testified that Sharisa has resided with Timothy and Pam consistently since January 2000. Timothy testified that after he was awarded custody, Shireen had visitation with Sharisa, but that in May or June 2001, he stopped Sharisa's visits with Shireen. Timothy testified that he did so because Sharisa came home after a visit with Shireen and said that Shireen was taking pictures of Sharisa while Sharisa was naked. Timothy testified that Sharisa had not seen Shireen since then. Timothy testified that he and Sharisa are "as close as a father [and] daughter can be."
Timothy testified that since Shireen became incarcerated, she has never provided any financial support for Sharisa, and that since June 2001, Sharisa had received three cards from Shireen. Timothy testified that Shireen had never called Sharisa, nor provided any emotional support for Sharisa in the previous 5 years. Timothy testified that in October 2001, Shireen voluntarily agreed to not have visitation with Sharisa. Timothy testified that if Shireen's parental rights were terminated, Pam would adopt Sharisa.
Timothy testified that Sharisa had not seen her brothers since Thanksgiving 2001. Timothy testified that he has no contact with his sons, because they blame him for Shireen's incarceration. Timothy testified that Shireen's parents have not promoted his relationship with his sons. Timothy testified that it is in Sharisa's best interests to be adopted by Pam.
The trial judge also spoke to Sharisa in chambers. Sharisa stated that she knows very little about Shireen, whom she termed her "birth mom." Sharisa stated that the court proceedings were "to get [her] birth mom's rights taken away." Sharisa stated that she wanted Pam to adopt her, but did not know why. When Sharisa was asked whether she had ever wanted to see Shireen, Sharisa stated, "Not really. . . . I haven't really been thinking about her."
Shireen testified that before her visitation with Sharisa was stopped, Shireen was very close to Sharisa and had a strong bond with her. Shireen testified that during the time she had visitation with Sharisa, Shireen began to have concerns regarding Timothy's care of Sharisa. Shireen testified that she noticed bruises on Sharisa's body, Sharisa appeared dirty and thin, and she was hungry.
Shireen testified that because of Sharisa's condition, she took Sharisa to an emergency room and the police were contacted, in addition to social services. Shireen testified that nothing ever came from any of the subsequent investigations. Shireen testified that Timothy stopped her visits with Sharisa in May 2001, because *456 Shireen had taken pictures of the bruises on Sharisa's body. Shireen testified that prior to this time, she exercised her visitation with Sharisa consistently.
Shireen testified that she did not agree to give up her visitation rights with Sharisa in October 2001. Shireen testified that when she became aware of the order stating that she would no longer have visits with Sharisa, Shireen contacted her attorney on multiple occasions, asking him to "correct the mistake." Shireen testified that she also contacted the court directly. Shireen testified that she did not appeal the order, because she did not know she could. Shireen testified that she continued to seek visitation with Sharisa, contacting several attorneys by telephone and writing approximately 20 letters to different people and organizations. Shireen testified that she also filed a cross-petition for visitation when Timothy filed to terminate her parental rights. Shireen testified that her cross-petition was stricken by the court.
Shireen testified that she sent Sharisa cards from 2001 until February 2004 for "Valentine's Day and Christmas and birthdays." Shireen testified that she also tried to call Sharisa, but that Timothy's telephone did not accept her collect calls. Shireen testified that she stopped sending Sharisa cards, because she did not know whether Sharisa was receiving them.
Shireen testified that while in prison, she took several classes, including classes on criminal behavior, domestic violence, stress and anxiety, and cognitive thinking skills, in addition to three classes on building positive relationships and a parenting class.
Shireen testified that she never intended to abandon or neglect Sharisa. Shireen testified that at the time of the divorce, she experienced depression and was treated for it. Shireen stated that she did not attempt suicide. Shireen testified that she is no longer depressed and is not on any medications.
Carol Denton, a licensed mental health practitioner, testified that she counseled Shireen for depression and anxiety from 1999 to 2001. Denton testified that during that time, she observed Shireen with Sharisa, and Denton described Shireen as very nurturing and loving toward Sharisa. Denton testified that Sharisa appeared bonded and attached to Shireen.
Denton testified that because Sharisa's contact with Shireen "ended abruptly" when Shireen became incarcerated, Sharisa was adversely affected. Specifically, Denton testified that because Sharisa was so young when her contact with Shireen ended, Sharisa may be prone to develop extreme rage, crying, and depression, and that depression could remain an issue throughout Sharisa's life. Denton testified that typically, a child who is separated from a parent at a young age faces difficulties with each new stage of development.
Denton testified that even if the child subsequently forms a new bond with a competent caregiver, that bond is less secure than the child's relationship with his or her parent. Denton testified that a child could be provided permanency without an adoption and that excluding a person a child is attached to is psychologically damaging to the child. Denton testified that it would not damage Sharisa psychologically to begin visitation with Shireen again. Denton testified that all children separated from a primary caregiver will experience rage and depression at some point in their lives. On redirect examination, Timothy testified that he had never seen Sharisa in a rage.
In an order filed December 28, 2006, the district court modified the decree of dissolution and terminated Shireen's parental rights to Sharisa. Specifically, the trial *457 court stated that having considered the nature of Shireen's crime, the fact that the victim of the crime was Sharisa's father, and the fact that Shireen is incarcerated, which prevents her from parenting Sharisa in an appropriate fashion, there is clear and convincing evidence to conclude that Shireen either abandoned or neglected Sharisa in a manner as to require termination of her parental rights. The trial court also found that termination of Shireen's parental rights is in Sharisa's best interests. Shireen appeals.

ASSIGNMENTS OF ERROR
On appeal, Shireen contends that the district court erred in finding (1) that there was clear and convincing evidence to establish that she intentionally abandoned or neglected Sharisa; (2) that it is in Sharisa's best interests to terminate Shireen's parental rights; and (3) that there was a material change in circumstances sufficient to justify a modification of the decree of dissolution, terminating her parental rights.

ANALYSIS

Termination.
[1] On appeal, Shireen contends that the district court erred in finding that there was clear and convincing evidence to establish that she intentionally abandoned or neglected Sharisa. Neb.Rev.Stat. § 42-364(7) (Cum.Supp.2006) concerns termination of parental rights in a dissolution action and states in part:
The court may terminate the parental rights of one or both parents after notice and hearing when the court finds such action to be in the best interests of the minor child and it appears by the evidence that one or more of the following conditions exist: (a) The minor child has been abandoned by one or both parents; (b) One parent has or both parents have substantially and continuously or repeatedly neglected the minor child and refused to give such minor child necessary parental care and protection.
[2, 3] In cases of termination of parental rights under § 42-364(7), the standard of proof must be by clear and convincing evidence. Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. Joyce S. v. Frank S., 6 Neb.App. 23, 571 N.W.2d 801 (1997), disapproved on other grounds, Betz v. Betz, 254 Neb. 341, 575 N.W.2d 406 (1998). In reviewing a termination of parental rights case held in district court, an appellate court reviews the record de novo to determine whether the district court abused its discretion. Worm v. Worm, 6 Neb.App. 241, 573 N.W.2d 148 (1997).
In the instant case, the trial court stated that having considered the nature of the crime, the fact that the victim of Shireen's crime was Sharisa's father, and the fact that Shireen's incarceration prevents her from parenting Sharisa in an appropriate fashion, there is clear and convincing evidence to conclude that Shireen either abandoned or severely neglected Sharisa in a manner as to require termination of her parental rights.
[4] Although termination of parental rights cannot be based solely on the fact that a parent has been incarcerated, courts may consider the attendant circumstances which are occasioned by incarceration, and when the aggregate of the circumstances indicates clearly and convincingly that the children's best interests dictate termination of parental rights, such is proper. In re Interest of Brettany M. et al., 11 Neb.App. 104, 644 N.W.2d 574 (2002).
*458 [5] With regard to cases involving termination of parental rights, Nebraska appellate courts have declared that when a parent whose parental rights are at issue has been incarcerated, we consider the nature of the crime committed, as well as the person against whom the criminal act was perpetrated. Conn v. Conn, 15 Neb. App. 77, 722 N.W.2d 507 (2006).
In Conn v. Conn, a father, Bobby Conn, conspired to murder his wife, Alicia Conn, in front of the couple's young child. After Bobby was convicted, he moved for visitation with the child, which Alicia opposed. The trial court denied Bobby visitation. After reviewing the evidence, this court affirmed the trial court's decision, stating, "While it is natural to focus on Alicia as the object of Bobby's crime, the subject child was also a victim of Bobby's scheme. Had Bobby's conspiracy achieved its end, the child would have been forever deprived of her mother." Id. at 84, 722 N.W.2d at 513.
Similarly, in the instant case, had Shireen's conspiracy to murder Timothy been successful, Sharisa would have been forever deprived of Timothy's love and affection. The record shows that Shireen became incarcerated in 2001, when Sharisa was approximately 3 years old, and that Shireen is not likely to be released from prison until 2009, when Sharisa is 11 years old.
Shireen has not seen Sharisa since the middle of 2001, and in the October 2001 modification granting Timothy custody of Sharisa, the parties' stipulated that Shireen would not have visitation with Sharisa. Since 2001, Shireen's contact with Sharisa has been limited to three birthday cards sent by Shireen to Sharisa.
Although Shireen claims that she never intended to abandon Sharisa, in In re Interest of B.A.G., 235 Neb. 730, 735, 457 N.W.2d 292, 297 (1990), the Nebraska Supreme Court noted that the father's actions which resulted in incarceration were "every bit as voluntary as if he had purchased a ticket for a 6-, 7-, or 8-year trek into Siberia" and that the father had just as effectively placed himself in a position where he could not possibly offer his presence, care, love, protection, maintenance, and opportunity for displaying parental affection.
Parental abandonment has been described as a parent's intentionally withholding from a child, without just cause or excuse, the parent's presence, care, love, protection, maintenance, and opportunity for the display of parental affection for the child. In re Interest of Deztiny C., 15 Neb.App. 179, 723 N.W.2d 652 (2006). The question of abandonment is largely one of intent, to be determined in each case from all of the facts and circumstances. In re Interest of Theodore W., 4 Neb.App. 428, 545 N.W.2d 119(1996).
In the instant case, Shireen's incarceration has similarly made it nearly impossible for her to provide for any of Sharisa's needs for at least 8 years of Sharisa's life. By conspiring to murder Timothy, Shireen has effectively placed herself in a position where she cannot possibly offer her presence, care, love, protection, maintenance, and opportunity for displaying parental affection. See In re Interest of Brettany M. et al., 11 Neb.App. 104, 644 N.W.2d 574 (2002). Furthermore, the record shows that Shireen continues to deny the conspiracy charges against her and does not indicate any remorse. Shireen has claimed that she was "setup" by Timothy, and there is evidence that Shireen blames Timothy for the fact that she is in prison.
Shireen cannot now complain that she did not have the opportunities to provide for Sharisa because of her incarceration, when it was her own conduct that placed *459 her in that position. For these reasons, we conclude that the evidence clearly and convincingly established that Shireen either abandoned Sharisa or substantially and continuously or repeatedly neglected and refused to give Sharisa necessary parental care and protection, justifying the termination of Shireen's parental rights.

Best Interests.
[6] Shireen argues that the trial court erred in finding that termination of her parental rights is in Sharisa's best interests. Pattison testified that Sharisa has developed secure attachments to Timothy and Pam. Pattison also testified that Sharisa calls Pam "mommy." Pattison testified that Sharisa has not had contact with Shireen since May or June 2001 and that this lack of contact has detrimentally impacted Sharisa's relationship with Shireen. Pattison testified that Sharisa has no real memory of Shireen.
Pattison testified that it is in Sharisa's best interests to reside with Pam and Timothy on a permanent basis. Pattison testified that she would be concerned if Shireen had visitation with Sharisa, because Shireen has no insight into how her conviction and resulting incarceration have negatively impacted Sharisa.
Pattison testified that she was also concerned given Shireen's history of emotional instability and "homicidal, suicidal thoughts." Pattison testified that Shireen had been suicidal on two prior occasions and had previously been diagnosed with major depression and bipolar disorder.
Pattison testified that she was concerned that Shireen would not seek treatment after her release from prison and would have a mental breakdown. Pattison also testified that Shireen has a past history of turning the children against Timothy.
The trial judge also spoke to Sharisa in chambers. Sharisa stated that she knows very little about Shireen, whom she termed her "birth mom." Sharisa stated that the court proceedings were "to get [her] birth mom's rights taken away." Sharisa stated that she wanted Pam to adopt her. When Sharisa was asked whether she had ever wanted to see Shireen, Sharisa stated, "Not really. . . . I haven't really been thinking about her."
Given this evidence, we cannot say that the trial court abused it discretion in finding that termination of Shireen's parental rights is in Sharisa's best interests.

Material Change in Circumstances.
[7] Shireen also argues that no material change of circumstances exists sufficient to justify the modification of the dissolution decree. Shireen contends that at the time of the October 24, 2001, modification, the parties were well aware of Shireen's conviction and sentence and Timothy failed to present the court with evidence which the court had been unaware of in October 2001. If, in a domestic relations case, a material change in circumstances has occurred, a former decree may be modified in light of those circumstances. Worm v. Worm, 6 Neb.App. 241, 573 N.W.2d 148 (1997).
At the time of the last modification, Shireen was incarcerated and was not seeking any visitation with Sharisa. Shireen is now seeking to have visits with Sharisa. As previously stated, Shireen continues to claim that she did not conspire to murder Timothy, the crime of which she was convicted. Shireen's continued denial clearly hinders the reestablishment of a relationship between Shireen and Sharisa. Additionally, Sharisa testified that she is not really interested in seeing Shireen after several years apart, and the evidence shows that Sharisa has developed a secure attachment to Pam over the last several years. These changes are material and could not have *460 been anticipated in October 2001, when the trial court previously modified the decree. See Joyce S. v. Frank S., 6 Neb.App. 23, 571 N.W.2d 801 (1997), disapproved on other grounds, Betz v. Betz, 254 Neb. 341, 575 N.W.2d 406 (1998). Therefore, there have been several material changes since the prior modification sufficient to allow the court to modify the decree again.

CONCLUSION
After reviewing the record, we conclude the district court did not err in finding that there was clear and convincing evidence to establish Shireen intentionally abandoned or neglected Sharisa; that it is in Sharisa's best interests to terminate Shireen's parental rights; and that there was a material change in circumstances sufficient to justify a modification of the decree of dissolution, terminating Shireen's parental rights. The trial court's order is affirmed in all respects.
AFFIRMED.